**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING FORMER VICE PRESIDENT MIKE PENCE | Misc. No. 23-35 (JEB) |

<u>**MEMORANDUM OPINION**</u>

The Special Counsel's investigation into interference with the transfer of power

following the 2020 presidential election proceeds behind doors that remain closed to the public.

Recently, however, former Vice President Michael R. Pence nudged them ajar when he revealed

in a series of public statements that the grand jury had subpoenaed him, that he had initially

refused to testify, and that this Court had stepped in to referee the resulting constitutional

dispute.  Seizing on these revelations, a set of news organizations has asked this Court to disclose

opinions, filings, and hearing transcripts related to Pence's privilege claim.  Although the

Government objects, the Court will grant the request in part, but with sufficient redactions to

preserve grand-jury secrecy.

**I.      Background**

Special Counsel Jack Smith is conducting two investigations related to the 2020

presidential election and its aftermath.  <u>See</u> <u>In re New York Times Co.</u>, Misc. No. 22-100, 2023

WL 2185826, at *4 (D.D.C. Feb. 23, 2023).  The one relevant here "concerns 'whether any

person or entity unlawfully interfered with the transfer of power following the 2020 presidential

election or the certification of the Electoral College vote held on or about January 6, 2021.'"  <u>Id.</u>

(citation omitted); see Press Release, Dep't of Justice, Appointment of Special Counsel (Nov. 18,
2022), https://perma.cc/G5K2-ZN7T.  Despite the intense media attention, those not part of the
investigation can make only educated guesses about its progress and scope.  See David A.
Graham, Don't Take Your Eye Off Jack Smith, The Atlantic (Apr. 3, 2023),
https://perma.cc/YKN4-GB5Z ("Smith's probe . . . has overseen an investigation with few
leaks.").

    A.  Pence's Public Statements

    In a series of three public statements, Pence narrowed some of that guesswork.  First, in
February 2023, he publicly announced that he had received a subpoena from the Special Counsel
to testify before a grand jury and that he intended to resist it.  See Melissa Quinn & Jonah
Kaplan, Pence Confirms He'll Resist Subpoena from Special Counsel in Trump Probes, CBS
News (Feb. 15, 2023), https://perma.cc/73FA-CHET.  In an apparent reference to the
Constitution's Speech or Debate Clause, he stated, "The Constitution of the United States
provides the Executive Branch cannot summon officials in the Legislative Branch into a court in
any other place."  Id.; see U.S. Const. Art. I, § 6 ("[F]or any Speech or Debate in either House,
[Senators and Representatives] shall not be questioned in any other Place.").  Pence added that
he sought to "defend[] the prerogatives that [he] had as president of the Senate to preside over
the joint session of Congress on January 6."  Quinn & Kaplan, supra at 2.

    According to media reports, the Special Counsel then moved this Court to compel Pence
to testify in spite of such purported privilege.  See Michael Kosnar & Rebecca Shabad, Special
Counsel Investigating Trump Asks Federal Judge to Compel Mike Pence to Give Jan. 6
Testimony, NBC News (Feb. 24, 2023), https://perma.cc/M5RE-XK24.  On March 28, 2023,
Pence stepped in to offer his second public update.  He appeared in an on-camera interview and

explained that although there was "a limited amount that [he] c[ould] say about those

proceedings, but when [he] received a subpoena from the Justice Department," he argued that "it

was not only unprecedented to ask a Vice President to come into court to testify about a

President with whom they served, but [also] . . . unconstitutional, believing that the

Constitution's speech and debate protections applied to [him] when [he] was serving as president

of the Senate on January the 6th."  Luca Cacciatore, Mike Pence to Newsmax: Jan. 6 Probe's

Subpoena 'Unconstitutional', Newsmax, at 0:20–0:51 (Mar. 28, 2023),

https://www.newsmax.com/newsmax-tv/mike-pence-subpoena-trump/2023/03/28/id/1114166/.

Having confirmed that he had indeed contested the subpoena on constitutional grounds, Pence

then added that "the Court accepted [his] argument" in part and that "the federal judge, really for

the first time in history recognized that the Constitution's speech and debate provisions do apply

to the Vice President when one is serving as president of the Senate."  Id. at 0:52–0:57, 1:34–

1:46.  He clarified that his team was still sorting out "what other testimony might be required"

and whether to appeal the ruling mandating such testimony.  See id. at 1:47–1:50.

In a third statement a week later, Pence proclaimed through his spokesperson that he

"will not appeal the Judge's ruling and will comply with the subpoena as required by law."

Washington Desk, Pence Won't Appeal Judge's Ruling, Paving the Way for His Testimony in

Justice Probe, NPR, (Apr. 5, 2023), https://perma.cc/D3MX-JVMN.  Pence nonetheless has not

confirmed that he did actually testify, and any reporting to the contrary remains unsubstantiated.

See Katelyn Polantz & Devan Cole, Former Vice President Pence Testifies to Federal Grand

Jury Investigating Donald Trump & January 6, CNN (Apr. 27, 2023), https://perma.cc/4PFT-

KBZQ ("A spokesman for special counsel Jack Smith's office and a spokesman for Pence both

declined to comment on Thursday."); Fin Gómez, Pence Appears for 7 Hours Before Grand Jury,

CBS News (Apr. 28, 2023), https://perma.cc/4BU2-4RBJ (relying on anonymous sources to report Pence "appeared for over seven hours before the grand jury").

    B.  The Press's Application

In between Pence's detailed disclosures, a Press Coalition (comprising ABC News, Associated Press, Bloomberg, Cable News Network, CBS News, Dow Jones & Co., the E.W. Scripps Company, LA Times, National Public Radio, NBCUniversal, The New York Times, and the Washington Post) moved to "access . . . certain judicial records ancillary to the grand jury investigation(s) into . . . the January 6, 2021[,] certification of th[e] [2020] election's results." ECF No. 1 (Press Application) at 1. The Press seeks "all judicial records pertaining to the Government's motion to compel [Pence] to comply with a subpoena that he received on or around February 9, 2023, calling for his testimony before the grand jury." Id.

Because the Chief Judge must "hear and determine all matters relating to proceedings before the grand jury," the Press's Motion was assigned to this Court. See LCvR 40.7(b). After the Court set briefing deadlines on the Press's Application, see Minute Order of Apr. 5, 2023, the Government moved to file its Opposition under seal and notified the public of that filing. See ECF No. 7 (Notice of Filing). The Court granted the Government's Motion to File Under Seal with the caveat that it could later order the Government to file a redacted version of its Opposition on the public docket. See Minute Order of Apr. 20, 2023. The Press, having seen only the Notice of the Opposition, understandably has filed no Reply. Although that Opposition was filed under seal, the Court may cite portions in this Opinion that deal exclusively with legal positions and divulge no facts.

## II.   Legal Framework

### A.   Grand-Jury Secrecy

In general, "the grand jury context presents an unusual setting where privacy and secrecy are the norm." In re Grand Subpoena, Judith Miller (Miller III), 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting In re Sealed Case (Dow Jones II), 199 F.3d 522, 526 (D.C. Cir. 2000)). Witnesses "enter the grand jury room alone . . . . No judge presides and none is present." In re Motions of Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998). Access to grand-jury materials turns on Federal Rule of Criminal Procedure 6(e)(2), which dictates that "[o]ther than witnesses, each person present . . . is forbidden from disclosing 'matters occurring before the grand jury.'" Id. (quoting Fed. R. Crim. P. 6(e)(2), 6(e)(3)(A)(ii)); see also In re Sealed Case No. 99-3091, 192 F.3d 995, 1002 (D.C. Cir. 1999). In this Circuit, the court, too, lacks any "inherent authority" to release matters occurring before the grand jury. McKeever v. Barr, 920 F.3d 842, 844, 850 (D.C. Cir. 2019). This arrangement "safeguards vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." Id. at 844 (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219 (1979)).

### B.   Accessing Ancillary Proceedings

Every so often, including in the current controversy, the grand jury's business calls for "judicial proceedings relating to," but "at arm's length" from, that body, including resolving a grand-jury witness's "motion to . . . quash [a] subpoena" or her invocation "of a testimonial privilege." Dow Jones I, 142 F.3d at 498. Documents in such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are governed by Rule 6(e)(6),

which requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal <u>to the extent and as long as necessary</u> to prevent the unauthorized disclosure of a matter occurring before a grand jury."  (Emphasis added.)  Hearings on these ancillary proceedings adhere to a similar rule.  <u>See</u> <u>id.</u> R. 6(e)(5) ("[T]he court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.").  Although Rule 6(e)(6) displaces any First Amendment or common-law right of access to documents in ancillary proceedings, <u>see</u> <u>Dow Jones I</u>, 142 F.3d at 500–04, the Rule allows for their release once sealing them is no longer "necessary" to protect grand-jury secrets.

In assessing the extent of such necessity, the Circuit has explained that Rule 6(e)(6)'s reference to "a matter occurring before a grand jury" protects "not only what has occurred and what is occurring, but also what is likely to occur" before that body.  <u>Id.</u> at 500.  Rule 6(e)(6) therefore protects information in ancillary documents that reveals "'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'"  <u>Id.</u> (quoting <u>SEC v. Dresser Indus., Inc.,</u> 628 F.2d 1368, 1382 (D.C. Cir. 1980)).

Although Rule 6(e)(6) "'does not create a type of secrecy which is waived once public disclosure occurs,' . . . it is also true that 'when information is sufficiently widely known[,] . . . it has lost its character as Rule 6(e) material.'"  <u>Id.</u> at 505 (quoting <u>In re North</u>, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).  The Rule's secrecy requirements therefore yield "when there is no secrecy left to protect."  <u>In re Grand Jury Subpoena, Judith Miller (Miller IV)</u>, 493 F.3d 152, 154 (D.C. Cir. 2007) (citation omitted).  As the Government acknowledges, one of the ways information loses its Rule 6(e) protection is when a grand-jury witness "intentionally publicize[s]" it.  <u>See</u> ECF No. 6 (Gov't Opp.) at 14; <u>see also</u> <u>Dow Jones I</u>, 142 F.3d at 496–99, 505 (holding court

could not deny request for ancillary documents on sole ground that disclosure would reveal identity of subpoenaed witness where witness's attorney had already "proclaimed from the rooftops that his client had been subpoenaed").

The D.C. Circuit illustrated these principles nearly two decades ago in publishing a partially redacted decision affirming a contempt order against a grand-jury witness.  See In re Grand Jury Subpoena, Judith Miller (Miller I), 397 F.3d 964, 965 (D.C. Cir. 2005).  It then granted a press request to unseal the redacted portions of its decision once other grand-jury witnesses publicly detailed admissions they had made to the grand jury that the court's decision had redacted.  See Miller IV, 493 F.3d at 153–54 (citing televised interview and published accounts entitled "What I Told the Grand Jury" and "My Role in the Plame Leak Probe"). "Although not every public disclosure waives Rule 6(e) protections," the court explained, "one can safely assume that the 'cat is out of the bag' when a grand jury witness . . . discusses his role on the CBS Evening News."  Id. at 154–55 (quoting In re North, 16 F.3d at 1245).  In addition to unsealing portions of its decision, the court also released segments of the Special Counsel's *ex parte* affidavits to the extent that they "discuss[ed] grand jury matters that ha[d] become widely known" through public disclosures by "grand jury witnesses themselves."  Id. at 155.

C.  Local Rule 6.1

This Court's Local Criminal Rules set out a mechanism for releasing documents in ancillary proceedings.  Rule 6.1 provides that "[p]apers, orders and transcripts of hearings" in proceedings ancillary to the grand jury "or portions thereof[] may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury."  (Emphasis added.) Once such a finding has been made, the Circuit has instructed that "where the Rules authorize

[courts] to do so, [courts] may — and <u>should</u> — release any information so long as it does not

reveal" material that Rule 6(e)(6) protects.  <u>In re Grand Jury Subpoena</u>, No. 18-3071, Order at 1

(D.C. Cir. Apr. 23, 2019) (emphasis added).  Prior to public release, the Chief Judge will also

"redact[] documents."  <u>Dow Jones I</u>, 142 F.3d at 501, 506 (describing Chief Judge's release of

former President Clinton's motion seeking contempt order for violations of grand-jury secrecy);

<u>see, e.g.</u>, <u>In re Grand Jury Subpoena No. 7409</u>, No. 18-41, 2019 WL 2169265, at *3, *5 (D.D.C.

Apr. 1, 2019) (ordering release of redacted briefs and transcripts in contempt dispute ancillary to

grand-jury investigation into foreign-election interference); Order and Unsealed Records, Grand

Jury No. 18-41 (June 7, 2019), https://perma.cc/4K53-B3KL (displaying redacted filings,

transcript, and court opinion for public viewing on court website).

      This Court's predecessor recently applied these principles to two requests for documents

concerning the Special Counsel's investigations into the former President.  First, it rejected a

request for filings and transcripts concerning "Trump's privilege challenge" in the same grand-

jury investigation implicated in the request at issue here.  <u>In re New York Times Co.</u>, 2023 WL

2185826, at *1–2.  Judge Beryl Howell explained that any response to the request would

inevitably disclose grand-jury material that retained Rule 6(e)(6) protection because the only

public reporting on that material relied on unnamed sources rather than "the type of confirmation

by government attorneys, grand jury witnesses, or a privilege holder that the Circuit has found

sufficient to make secrecy no longer necessary."  <u>Id.</u> at *14.  Less than a month later, and on the

same grounds, she declined another press request concerning the Special Counsel's investigation

of Trump's handling of classified documents.  <u>See</u> <u>In re Press App. for Access to Judicial</u>

<u>Records & Proceedings Ancillary to Certain Grand Jury Proceedings Concerning Donald J.</u>

Trump and the Trump Organization, Misc. No. 22-128, ECF No. 6, at 1–2, 4–5 (D.D.C. Mar. 11,

2023).

**III.     Analysis**

In its current Application, the Press requests documents concerning only Pence's

ancillary privilege dispute (which may reveal, but is not itself, a matter before the grand jury).

The Court first addresses whether and to what extent these ancillary documents must remain

sealed under Federal Rule 6(e)(6) to conceal any still-protected grand-jury material.  It next

considers whether it should exercise its discretion under Local Rule 6.1 to release redacted

copies of such ancillary documents at this time in light of the Government's sweeping opposition

to the Press's request.

A.   The Press's Request and Rule 6(e)

The Press seeks to unseal, with any necessary redactions, those "records Pence himself

has publicly discussed."  ECF No. 1 (Mem. in Support of Press App.) at 2.  It does so on the

ground that Pence has "publicly acknowledged" the facts underlying the privilege dispute.  See

Press App. at 1 (citing Brittany Shepherd, Pence Says 'Nothing To Hide' from Grand Jury in

Trump Jan. 6 Probe, ABC News (Mar. 29, 2023), https://perma.cc/4F43-6QQV).

The Court agrees with the Press's reasoning.  As the Government recognizes, Pence's

public statements disclose his constitutional challenge to the subpoena, this Court's partial

rejection of that challenge, and his intent to testify before the grand jury.  See Opp. at 18.

Collectively, those statements constitute exactly the kind of extensive disclosure by a "grand jury

witness[] . . . that the Circuit has found sufficient to make secrecy no longer necessary."  In re

New York Times Co., 2023 WL 2185826, at *14.  "[O]ne can safely assume that the 'cat is out

of the bag'" after the feline (or the witness) has conducted a televised interview.  <u>Miller IV</u>, 493

F.3d at 155 (quoting <u>In re North</u>, 16 F.3d at 1245).

      The heart of what the Press asks for here, and what the Court plans to release, is the legal

discussion surrounding the dispute Pence has already revealed.  That includes the analysis

contained in (1) the briefing in support of or in opposition to Pence's position, (2) a transcript of

the hearing on the issue, and (3) this Court's Opinion and Order resolving the dispute.  <u>See</u> Mem.

at 2.  (Although the Press also requests a "Government[] motion to compel Pence's testimony,"

<u>id.</u>, Pence's disclosures about the grand jury's subpoena reveal nothing about whether the

Government filed a motion to compel.)  Having thus determined that those documents may be

disclosed in some form, the Court next explains precisely what portions should remain sealed

pursuant to Rules 6(e)(5) and 6(e)(6).

      Recall that the Court must withhold not only "what has occurred and what is occurring,

but also what is likely to occur" before the grand jury.  <u>Dow Jones I</u>, 142 F.3d at 500.  As a

result, documents responsive to the Press's request must be redacted to remove any references to

the parties' or the Court's understanding of what, if any, specific testimony the grand jury sought

from Pence or the factual or strategic basis for such subpoena — to the extent that his disclosures

do not already reveal them.  Even legal arguments or analyses concerning the scope of the

Speech or Debate privilege that might be tailored to specific anticipated grand-jury testimony or

that rely on past testimony must be redacted to ensure that they do not implicitly divulge

protected information.  Given that Pence has revealed the general nature of the grand jury's

request as concerning at least in part his role "as president of the Senate to preside over the joint

session of Congress on January 6," Quinn & Kaplan, <u>supra</u> at 2, however, discussions applying

the Speech or Debate privilege to that role may be released.

The Government, for its part, argues that <u>all</u> documents relevant to Pence's privilege dispute "must be kept entirely under seal" because "information protected by Rule 6(e) is inextricably intertwined with material that is no longer protected" and cannot be redacted out. <u>See</u> Opp. at 15.  That can occur where "matters occurring before the grand jury" are woven "so tightly" into the ancillary proceeding that "'redaction is simply not possible,'" <u>Dow Jones I</u>, 142 F.3d at 505 (quoting <u>In re North</u>, 16 F.3d at 1242), or where any necessary redactions would render what remains "either unintelligible or misleading."  <u>In re New York Times</u>, 2023 WL 2185826, at *10.  The Government warns that here, disclosure will inevitably reveal (a) the existence of separate disputes arising out of the grand jury's investigation, and (b) the specific testimony the grand jury sought and may have obtained from Pence.  <u>See</u> Opp. at 18–19.  Neither argument is availing.

As to the first, the Court's review makes clear that appropriate redactions to the parties' filings, the hearing transcript, and the Court's Opinion on the Speech or Debate issue can sufficiently excise discussions of any other procedural or legal disputes arising from this grand-jury investigation.

Information about any specific testimony the grand jury may seek from Pence, <u>see</u> Opp. at 20, can be similarly redacted.  The Government admits that the witness has "generally acknowledged that the dispute concerned his duties as President of the Senate on January 6, 2021," but it emphasizes that he did not "provide any specifics about what he contended the scope of those duties were, the extent to which he claimed the protection applies, or the acts he asserted the Clause covers."  <u>Id.</u>  The Court believes that it can segregate the legal analysis of the privilege from any "facts produced from the investigation [that] are so integral to [such] analysis that revealing the latter would also reveal the former."  <u>In re New York Times</u>, 2023 WL

218586, at *13.  For example, the Government's claim that specifics "permeated the entirety" of the hearing transcript leaves unexplained how general discussions of caselaw and hypotheticals defining the scope of the privilege would reveal anything about what specific information the grand jury requested.  See Opp. at 21; see e.g., Hearing Trans. of Mar. 23, 2023, at 35, In re Grand Jury Subpoena, Grand Jury No. _ (D.D.C. Mar. 27, 2023) (Pence attorney: "I will go back to what the court says in Eastland.  The privilege, where it applies, sweeps broadly, and it may protect material that otherwise the government or a private actor in a civil suit might want to have.").

"[D]iscrete portions" of the documents the Press seeks can therefore "be redacted without doing violence to their meaning."  In re Grand Jury Subpoena, Judith Miller (Miller II), 438 F.3d 1138, 1140 (D.C. Cir. 2006).  The Press is not asking for subpoenas or transcripts of witness testimony.  It seeks only a set of filings related to a legal dispute concerning the scope of the Constitution's Speech or Debate Clause, the mixed outcome of which Pence has already revealed.  See Cacciatore, supra at 3 (Pence explaining that "the Court accepted [his] argument" that "the [C]onstitution's speech and debate protections applied to" him while holding that some "testimony might be required"); Washington Desk, supra at 3 (describing Pence's disclosure that "the Judge's ruling" required he "comply with the subpoena").  Even if the redactions disproportionately reveal more of one component of the briefing, hearing, or the Court's decision than of others, that result will not "mislead[] as to the overall import of the Court's opinion," Opp. at 21, as its bottom-line holding that Pence must comply with the subpoena in part is already known.

The material protected by Rule 6(e) in the documents the Court releases today is no "leaven in a loaf of bread" that "cannot be separated out."  In re North, 16 F.3d at 1242

(releasing documents in their entirety due to scope of prior public disclosure but lamenting

inability to redact).  On the contrary, it is crust that may be neatly pared away.

    B.  <u>Local Rule 6.1 Considerations</u>

    Having established that redactions to these ancillary documents can preserve grand-jury

secrecy, the Court turns to whether it <u>should</u> release them at this time.  Recall that in the district

court, this discretionary inquiry is rooted in Local Rule 6.1, which states that documents in

proceedings ancillary to the grand jury "or portions thereof, <u>may</u> be made public by the Court . . .

on motion of any person upon a finding that continued secrecy is not necessary to prevent

disclosure of matters occurring before the grand jury."  (Emphasis added.)  Where a party

invokes the Local Rule to request materials ancillary to grand-jury proceedings, the district court

is to "duly consider the request" and "if it denies the request, offer some explanation."  <u>Dow</u>

<u>Jones II</u>, 199 F.3d at 523.  In asking whether redacted documents should be released, courts

typically assess various discretionary considerations.  <u>See, e.g.</u>, <u>Miller II</u>, 438 F.3d at 1140 ("If

the public is to see our reasoning, it should also see what informed that reasoning."); <u>In re Grand</u>

<u>Jury Subpoena</u>, No. 18-3071, Order at 2 (citing public interests in learning about "court's

reasoning" and "government's assertion of power").

    The Court concludes here that those discretionary considerations counsel in favor of

release.  For one, disclosure "will permit the public" to "see (in part) 'what informed [the]

reasoning'" behind the Court's resolution of a novel constitutional dispute.  <u>See In re Grand Jury</u>

<u>Subpoena</u>, No. 18-3071, Order at 2 (quoting <u>Miller II</u>, 438 F.3d at 1140) (citation omitted).

Pence's invocation of the Speech or Debate Clause and this Court's resolution of the ensuing

controversy carry far-reaching public implications.  The Speech or Debate Clause, after all,

"reinforc[es] the separation of powers so deliberately established by the Founders," <u>United</u>

States v. Johnson, 383 U.S. 169, 178 (1966), a principle "essential to the preservation of liberty"

in our democracy.  Mistretta v. United States, 488 U.S. 361, 380 (1989).  Furthermore, as the

Press notes and as Pence's comments reveal, no other court has applied the Clause to the Vice

President.  See Mem. at 7 (quoting Pence's statement that this is "the first time in history" the

Clause has been so applied); see also Michael Stern, How Much Can the Speech or Debate

Clause Protect Mike Pence?, Lawfare, https://perma.cc/57NV-FKV6 (Feb. 27, 2023) (identifying

"the novel questions presented by Pence's case and the confusion in the lower courts about the

Speech or Debate Clause generally").  The Court therefore should "release any information" it

can about this significant constitutional dispute "so long as it does not reveal" material protected

by grand-jury secrecy.  See In re Grand Jury Subpoena, No. 18-3071, Order at 1.

　　　The Government rejoins that the Court should refrain from disclosure because the

investigation remains ongoing and is proceeding under intense media scrutiny.  See Opp. at 16,

22–24.  Neither ground changes the Court's mind.

　　　The Court certainly recognizes that where "the special counsel's investigation is

ongoing," the "need for maintaining grand jury secrecy" is "only heighten[ed]."  Miller II, 438

F.3d at 1141.  It further acknowledges that the disclosures have been made by a grand-jury

witness, not the Government, which has carefully adhered to grand-jury secrecy.  See Opp. at 10

& n.5 (pointing out that Government "has not even publicly acknowledged the existence of the

grand jury's investigation"); cf. In re North, 16 F.3d at 1245 ("[W]hen the media reports

information alleged to be grand jury material, 'the government is obligated to stand silent' and

not confirm the information, whether it is accurate or not.") (quoting Barry v. United States, 740

F. Supp. 888, 891 (D.D.C. 1990)).  In support of its appeal to discretionary withholding, the

Government emphasizes the sensitive nature of this particular investigation, invoking

"compelling law enforcement and privacy interests in maintaining the confidentiality of an ongoing, preindictment investigation into serious crimes."  Opp. at 23.  The Government cites concerns about "reveal[ing] the nature, direction, and scope of th[e] investigation" in a manner that might "provide opportunities for potential targets" to tamper with witnesses or evidence.  Id. It also expresses concern that any disclosures might "appear to confirm" media reporting about "as-yet-unconfirmed witnesses, subjects, or targets," which might in turn make witnesses hesitant to cooperate or harm the reputation of unindicted persons.  Id. at 24.

The Court's release here, however, is precipitated not by uninformed "media requests predicated on general leaks," In re New York Times, 2023 WL 2185826, at *10, but by a grand-jury witness's detailed description of one facet of the proceedings.  The Government's concerns must yield where the documents responsive to a request so precipitated, and once properly redacted, offer no leads to other witnesses or evidence.  A comparison to a case on which the Government relies illustrates this distinction.  This Court's predecessor reasonably rejected the Washington Post's effort to obtain disclosure of "warrant materials issued in separate investigations" merely "related to" a then-ongoing campaign-finance investigation.  Matter of the Application of WP Co. LLC, 201 F. Supp. 3d 109, 119 (D.D.C. 2016) (internal quotation marks omitted).  Judge Howell found that "the degree of media scrutiny" on the case made it more likely that the public could guess "'the names and identities of persons referenced'" in the separate investigative documents the press sought.  Id. at 128 (quoting record).  Here, however, the Press is not seeking information about separate investigations or warrants concerning additional undisclosed parties; it seeks only documents concerning a single grand-jury witness's privilege claim.  Responding to that narrow request with appropriate redactions may fill legal

15

gaps about the Court's reasoning, not factual gaps about how the grand jury's investigation is proceeding.

The Court is also cognizant that particular care is required where an investigation proceeds under intense media scrutiny such that filling gaps in public reporting could inadvertently reveal grand-jury material.  This is such a case.  See Morning Edition, Judge Is Expected to Rule Vice President Pence Must Testify in Jan. 6 Attack Probe, NPR, https://perma.cc/BML8-XZ7V (Mar. 29, 2023) ("Without knowing the exact wording of the ruling, which remains sealed, . . . . What is the judge saying Pence must talk about? And what is he saying he can refuse to talk about?"); see also Opp. at 16, 23–24; In re New York Times, 2023 WL 2185826, at *10.  Courts in this district, however, have regularly released filings and transcripts of proceedings ancillary to a grand jury's investigation while the ongoing investigation proceeded under close media scrutiny.  In one recent example, "the government . . . agree[d] that Local Criminal Rule 6.1 call[ed] for the release of" the parties' "redacted briefs and transcripts" from a contempt proceeding against a corporation subpoenaed by the highly publicized and then-ongoing grand-jury investigation into foreign interference with the 2016 presidential election.  In re Grand Jury Subpoena No. 7409, 2019 WL 2169265, at *4; see Isaac Chotiner, How the Times Reported the F.B.I. Counterintelligence Investigation into President Trump: An Interview with the Journalist Adam Goldman, The New Yorker (Jan. 12, 2019), https://perma.cc/GJ7G-XA6S (describing media attention on Special Counsel Mueller's investigation).  Indeed, it is typically in response to inquiries from the media that such material is released.  Amid a grand jury's investigation into "Monica Lewinsky and [then-]President Clinton," during which "the press ha[d]" for months "staked out the courthouse, photographing and attempting to intercept anyone who[] . . . might shed light on the grand jury's progress," the

16

D.C. Circuit permitted the Chief Judge to release redacted hearing transcripts "consistent with the limits of Rule 6(e)(6)" and the Court's Local Rules.  Dow Jones I, 142 F.3d at 498, 506. Nearly two decades later, the Circuit issued a lengthy, minimally redacted opinion in another high-profile grand-jury-related appeal, this one concerning a contempt order issued against a set of reporters who refused to comply with a grand jury's subpoena investigating reporting on the Iraq War.  See Miller I, 397 F.3d at 965 (describing grand-jury investigation as ongoing), reissued, 438 F.3d 1141 (D.C. Cir. 2006).  That redacted opinion previewed the information the grand jury sought, canvassed the parties' legal arguments, and detailed the court's reasoning. See id. at 967, 976.

Given the Press's narrow request and this historical context, the Court's proposed approach is sufficiently conservative to account for the Government's concerns about the ongoing investigation and the media scrutiny surrounding it.

\*   \*   \*

Local "Rule 6.1 means what it says in providing a limited right of access with respect to grand jury ancillary proceedings in which continued secrecy is not necessary to prevent disclosure of matters before the grand jury."  Dow Jones II, 199 F.3d at 527.  The Court has therefore made redactions to the briefs, hearing transcript, and its Opinion and Order "after necessary consultation with the government . . . to redact text that discloses a 'matter occurring before the grand jury,' while providing public access to the applicable law and legal analysis." In re New York Times, 2023 WL 2185826, at *8; see also Miller IV, 493 F.3d at 155 (rejecting "Special Counsel's recommendations as to precisely which redacted material we can release" as "too narrow").  The redacted documents will be "published on the Court's website for the public to view."  In re New York Times, 2023 WL 2185826, at *9; see Grand Jury, U.S. District Court

for D.C., https://www.dcd.uscourts.gov/unsealed-orders-opinions-documents/Grand%20Jury

(last visited May 24, 2023).  That publication will occur on June 13, 2023, unless the

Government appeals this decision before that date.

In so acting, the Court reveals only those matters before the grand jury that Pence has

"virtually proclaimed from the rooftops."  Dow Jones I, 142 F.3d at 505.  All other 6(e) material

for now remains tucked safely behind the grand jury's closed doors.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part the Press's

Application.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 9, 2023