## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **IN RE GRAND JURY SUBPOENA** ) | **CASE NO.** |
| ) | **UNDER SEAL** |
| ) | **GRAND JURY** |
| ) | |

## FORMER VICE PRESIDENT MICHAEL R. PENCE'S REPLY IN
## SUPPORT OF HIS MOTION TO QUASH SUBPOENA

Former Vice President Pence's Motion to Quash ("Motion" or "Mot.") presents a separation of powers issue of first impression: whether the former Vice President, as President of the Senate, may be "questioned in any other Place" concerning his preparation for, and activities in, the Joint Session. Art. I, § 6, cl.1. Constitutional structure, history, and canonical case law emphatically support the position of the former Vice President: that the Speech or Debate Clause forbids the Executive and Judicial Branches from compelling him to testify about,

his exercise of the constitutional and statutory powers conferred by the Constitution's Article I and Twelfth Amendment and by the Electoral Count Act, 3 U.S.C. §§ 15, 18.

Courts have endorsed this position in dicta. And, consistent with its longstanding position that the Vice President "is attached by the Constitution" to the "Legislative Branch," 1 Op. O.L.C. Supp. 214, 222 (1961), the government has repeatedly taken this position in litigation. But now that the Speech or Debate question is squarely presented for resolution, the Government has reversed course. And it has done so in a pleading that proposes a series of alternate holdings—a number of them inconsistent with each other—that flout this institutional position, distort or defy binding case law, and threaten substantial separation of powers harm.

The Government's Opposition ("Opposition" or "Opp.") is simply extraordinary. It begins with a wholly irrelevant discussion (comprising one-third of the brief) of former Vice President Pence's memoir—even though voluntary statements by former legislative officials simply have no bearing on the question of compelled testimony. The Government then argues that Vice President Pence was free *not* to invoke the Clause's immunity. But that is likewise irrelevant. *Any* controversy may be resolved if one party concedes to the other, and so the simplest response may just be to say that the Government was likewise free not to issue ⬛⬛ the grand jury's subpoena. ⬛⬛

⬛⬛ the Government cannot seriously expect former Vice President Pence to forgo invoking a protection adopted by the Framers for just such a situation. It was *the Government* and not former Vice President Pence who created the confrontation now requiring resolution by the Court. And *the Government* should offer a constitutionally reasoned basis for doing so.

It has not done so here. When, 14 pages into a 30-page brief, it finally gets around to responding to the merits of Movant's arguments, the Government reverses its seemingly settled position on the issue, on no principled basis and with only a bare (and dubious) assertion to the effect that the Department had previously never before analyzed the reasons for its now-abandoned position.

On the facts, the Government argues that the subpoena is *not seeking* what it manifestly *is seeking*. Although the government professes that "the grand jury subpoena does not seek any legislative acts evidence," Opp. 23, it defines the "topic areas on which it seeks to question Pence" to include ⬛⬛

2

On the law, the Government proffers a view of the Clause's protection that is openly inconsistent with the reasoning and decisions of cases from the Supreme Court and this Circuit. To take one example, it proposes that this Court adopt a balancing-type test for determining the scope of the Clause's protection, when the Supreme Court has clearly said that "when activity is found to be within the legislative sphere, balancing plays no part." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 n.16 (1975). To take another: the Government proposes to divide acts within the legislative sphere into protected ("core") and non-protected ("non-core") categories, in the face of settled law to the effect that the only pertinent distinction is between acts within the legitimate legislative sphere (a/k/a "legislative acts") and non-legislative acts.

Groping for a way to exclude the Vice President from the Clause's coverage, the Government consistently attempts to collapse the difference between the Speech or Debate Clause's *absolute* privilege from *testimonial compulsion* and other, distinct protections. One is the Clause's *evidentiary* privilege which, although also absolute, is simply not at issue in this Motion. The other is a common-law legislative immunity not derived from the Clause and which appears to apply only to state and local officials who are not entitled to the structural protections of the Constitution.

Like the "epicycles" of Ptolemaic astronomy, the Government's proposed, Vice-President-only, exceptions have been devised to save the Government from the clear implications of existing law. They are inconsistent with Speech or Debate Clause jurisprudence and their plain purpose is to obtain compelled testimony on the very legislative-acts evidence the Government denies seeking. Again, taking only one example, the Government argues that the Vice President must

3

testify because

         . But it is well established that the Speech or Debate Clause protects only those acting in a legislative capacity. It is equally well-established that a legislator's preparations for a Congressional meeting are immunized from inquiry by the other Branches.

In sum and in effect, the Government is asking the Court to do the Government's own work for it: to contrive a basis for denying the Motion—a basis that finds no reasoned articulation in the Government's Opposition. This Court, the Vice Presidency, and the Constitution deserve better.

\*      \*      \*

Former Vice President Pence's position is, by contrast, straightforward. The United States Constitution vests the Vice President with a specific Legislative Branch power, providing that "the Vice President of the United States shall be President of the Senate." Art. I, § 3. The Twelfth Amendment requires him, in the performance of that legislative role, to preside over the electoral count. The Electoral Count Act requires him to perform a number of specific duties in carrying out that legislative function. 3 U.S.C. §§ 15, 18. For all purposes relevant to this dispute, the Vice President is therefore a legislative actor. A host of cases establish that the Speech or Debate Clause protects legislative actors in the performance of duties integral to that role, that is, when they perform legislative acts. Many others teach that the Clause's protections are not limited only to Senators and Representatives and that protected acts include acts taken in preparation for Congressional proceedings. Vice Presidents are therefore protected by the Clause and the Government's subpoena should be quashed to the extent it seeks testimony relating to Vice President Pence's January 6 actions and his preparations for them.

4

## ARGUMENT

I.   **Vice President Pence's Actions on January 6, 2021 and His Preparation for That Day are Legislative Acts Protected by the Speech or Debate Clause.**

    A.   **The Speech or Debate Clause Applies to the Vice President's Legislative Acts.**

The literal text of Article I, section 6, does not name the Vice President as a person protected by the Speech or Debate Clause. That must be acknowledged. But every other consideration affecting the Clause's application supports providing Vice Presidents with that protection when they act in a legislative capacity. And until last Friday, the Justice Department agreed. *See* Mot. 5.

The Constitution's structure supports applying the Speech or Debate Clause to the Vice President. The Vice Presidency is a "hybrid," Opp. 19, with both executive and legislative functions. U.S. Const. art. 1, § 3, cl.4; *id.* amend. xxv, §§ 3, 4. While today it is common to think of the Vice President as belonging to the Executive Branch, the Vice President's first constitutional power, and for 180 years the office's *only* constitutional power, was *legislative*: to preside over the Senate and supply the casting vote in the event of a tie. U.S. Const. art. 1, § 3, cl.4. The Vice President is thus undeniably a legislative actor. And former Vice President Pence performed his duties on January 6 in his role as a legislative actor, a role created by Article I, the location in which the Constitution placed the Legislative Branch. Mot. 2, 9-10.

Though the Speech or Debate Clause does not literally say "Vice President," the Supreme Court "has given the Clause a practical rather than strictly literal reading." *Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979); *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015); *accord* Opp. 20-21; Mot. 9. In *Gravel v. United States*, the Supreme Court extended the Speech or Debate Clause's immunity to certain non-constitutional officers. 408 U.S. 606, 616-18 (1972). The Court also extended the Clause's immunity "beyond pure speech or debate in either House . . . ." *Id.* at

5

625. The immunity protects all "legislative acts" or matters that are "an integral part of the deliberative and communicative processes by which Members participate . . . with respect to matters which the Constitution places within the jurisdiction of either House." *Id.*; *accord* Opp. 24; Mot. 7. Consistent with this precedent, courts have applied the Clause's protection to staff serving individual members, committee staffers, House clerks, staff directors, counsel, consultants, and investigators. *See Rangel*, 785 F.3d at 25 (citing cases); *Doe v. McMillan*, 412 U.S. 306, 312, 318 (1973) (clerk, staff director, counsel, consultant and investigator of House committee); *see also* Mot. 5-6. And courts recognize a host of tasks, including communications, preparations, and receipt of information, as protected legislative acts. *See Gravel*, 408 U.S. at 628-29 (conversations between Senator and aide); *Hutchinson*, 443 U.S. at 133 (preparing committee reports); *id.* (voting); *McMillan*, 412 U.S. at 311 (conducting hearings); *Eastland*, 421 U.S. at 504 (conducting investigations); *Howard v. Office of the Chief Administrator*, 720 F.3d 939, 946 (D.C. Cir. 2013) (preparing "for legislative activities"); *Consumers Union of United States, Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1344, 1350-51 (D.C. Cir. 1975) (denying an organization's application for admission to the House and Senate Periodical Press Galleries); *Rangel v. Boehner*, 20 F. Supp. 3d 148, 179 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) (receiving information in preparation for hearing); *see also* Mot. 7.

"The key consideration, Supreme Court decisions teach, is the act presented for examination, not the *actor*." *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984) (Ginsburg, J.) (emphasis added); *Rangel*, 785 F.3d at 25 (same). If the Speech or Debate Clause protects legislative staffers from questioning of their acts outside the four walls of either House, then the Clause surely protects a Vice President, acting as President of the Senate, whose legislative role is an express creation of Article I, when he is performing his mandated legislative duties. Mot. 10.

6

The Government's contrary arguments are not persuasive. Tacitly rejecting the Court's repeated direction that the protection is to be construed "broadly," *Eastland*, 421 U.S. at 501; *Rangel*, 785 F.3d at 23, the Government first argues that *Gravel* extends Speech or Debate protection to legislative staffers because that protection is "derivative" of a Senator or Member's own immunity. *See* Opp. 17-18. But the many cases extending Speech or Debate immunity more broadly than Senators, Representatives, and their individual staffs do not rest on a "derivative" coverage theory. Were that the governing principle, the Speech or Debate protection would be far narrower than the range of cases to which the Supreme Court or D.C. Circuit has in fact applied it. Instead, the key is legislative function, which, when "integral" to the legislative process, provides the basis for legislative immunity. *Gravel*, 408 U.S. at 625; *Schilling v. Speaker of the House of Representatives*, 2022 WL 4745988, at \*8 (D.D.C.); Mot. 7. That principle—and not the Government's "derivative" privilege—explains why courts have applied the protections of the Speech or Debate Clause to the activities of committee clerks, counsel, investigators, and legislative committee staff. *See, e.g.*, *Eastland*, 421 U.S. at 501; *id.* at 507 ("We draw no distinction between the Members and the Chief Counsel."); *McMillan*, 412 U.S. at 311-13.

The Government's attempt to narrow the doctrine to Senators, Representatives, and their "derivatives," Opp. 18, would eviscerate the Speech or Debate Clause's real constitutional function: protection of legislative independence in a government of separated powers. *See Eastland*, 421 U.S. at 502; *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 8-9 (D.C. Cir. 2006). In the end, whether anyone's immunity can fairly be called "derivative" (or not), it is *the Speech or Debate Clause itself*—and not any agency-type theory—that provides the constitutional source for the immunity from compelled testimony enjoyed by Article I legislative actors.

The Government also argues that applying the Speech or Debate Clause to the Vice President "would not further its interrelated purposes of preserving the 'independence and integrity of the Legislative Branch,'" and that former Vice President Pence has "not explain[ed] how its application to a Vice President effectuates Separation of Powers ends." Opp. 18; *accord* Opp. 19 ("[T]he Clause's separation-of-powers rationale . . . ill fits the Vice President, a member of the Executive Branch, whose legislative role is limited generally to tie-breaking votes and presiding over ceremonial matters."). The explanation is obvious. The Speech or Debate Clause effectuates its ends by insulating the Vice President—who acts as the constitutionally primary presiding officer of one legislative chamber and as the constitutionally presiding officer of both legislative chambers for the electoral count—from questioning about his legislative acts by the other Branches, which is exactly what the Executive Branch is seeking Judicial Branch assistance to do here. *See* Mot. 6, 8. However infrequently it may occur, from the standpoint of constitutional structure, this conduct is the exact type of mischief that the Speech or Debate Clause is intended to prevent. *See Eastland*, 421 U.S. at 502; *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 991 (D.C. Cir. 2021); *Fields*, 459 F.3d at 8-9.

Although the Government acknowledges the critical fact that "the Vice President's hybrid position *involves legislative responsibilities*," it goes on to say that "the Vice President does not shed his Executive Branch status upon setting foot on the Senate floor . . . ." Opp. at 19 (emphasis added). And on that curious basis, the Government asserts that "there is no sound reason to protect the Vice President from a Branch of which he is a part." Opp. 19. The Government's position is in strong (and unexplained) tension with the position it has taken regarding

8

In any case, the response is simple: constitutionally speaking, the Vice President is a part of *both* branches (*compare* U.S. Const. art. 1, § 3, cl.4; *with id.* amend. xxv, §§ 3, 4), and the role to which the Speech or Debate applies here is indisputably the legislative role. But even if (contrary to constitutional fact) the Vice President were thought to "belong" primarily to the Executive Branch, there is no reason to conclude that he lacks the protection due a legislative actor when he acts as a legislative actor. *Cf. Forrester v. White*, 484 U.S. 219, 225 (1988) (explaining that judicial immunity "extend[s] to Executive Branch officials who perform quasi-judicial functions"). Article I of the Constitution makes the Vice President a legislative actor and that same Article I provides the immunity.

**B. The Speech or Debate Clause Protects Former Vice President Pence from Testifying About His Acts Arising from the Legislative Sphere.**

Contrary to the Government's position taken in certain parts of the Opposition, *see* Opp. 14, 16-18, former Vice President Pence quite obviously *was* charged with performing legislative

9

duties on January 6.[1] The Electoral Count Act ("ECA")[2] prescribed that the President of the Senate—here former Vice President Pence—preside over the electoral vote count and preserve order. 3 U.S.C. §§ 15, 18. While presiding, the President of the Senate opens "all the certificates and papers purporting to be certificates of the electoral votes," "announce[s] the state of the vote," and "call[s] for objections." *Id.* at § 15. On January 6, 2021, former Vice President Pence, as President of the Senate, presided over the Joint Session of Congress and he also presided over the Senate during portions of the time in which the Senate met as a separate House. 167 CONG. REC. at H75 (Joint Session), S13 (Senate). His preparation for that day occurred against a historic

---

[1]As reflected in the Congressional Record, 167 CONG. REC. H75 (daily ed. Jan. 6, 2021), Vice President Pence performed at least the following legislative acts on January 6-7, 2021:

*Presiding over the Joint Session*, he (1) called the Joint Session to order, *id.* at H76; (2) announced the rule for ascertaining and counting the votes of each state, *id.*; (3) asked for objections to individual states' vote count, *id.* at H76 and *passim*; (4) instructed both Houses to withdraw for separate consideration of lawfully tendered objections to the Arizona certificate, H77, and to the Pennsylvania certificate, *id.* at H98; (5) resumed his presiding role over the Joint Session after the interruption and the completion of debate, *id.* at H94; (6) declared that because the two Houses had not sustained the objection, the original Arizona and Pennsylvania certificates would be counted, *id.* at H94, H113; (7) ruled on and rejected certain objections to state certificates because they were not signed both by a Member and a Senator, *id.* at H95 (Hawaii), H97 (Nevada), H114 (Wisconsin); (8) declared the state of the final vote for President and Vice President, stating that the declared state of the vote "shall be deemed a sufficient declaration of the person elected President and Vice President of the United States," *id.* at H115; and (10) declared the Joint Session dissolved, *id.*

*As President of the Senate Presiding over the Senate*, he presided over the two-hour periods for debate provided by 3 U.S.C. § 17. *Id.* at S13. In that role he (1) recognized individual Senators for their 5-minute speeches, *id.* at S15 and *passim*; (2) addressed the entire Senate following the reconvening at 8:08 pm, *id.* at S18; (3) announced the expiration of time for debate and instructed the clerk to call the roll for the count, *id.* at S38; (4) announced that the objection to the Arizona electoral votes, *id.* at S32, and the Pennsylvania Electoral votes, *id.* at S38, were not sustained; and (5) ordered the adjournment of the Senate itself, *id.* at S40.

[2] The ECA has since been amended by the Electoral Count Reform Act (2022).

10

backdrop in which the electoral count had been challenged in three of the previous five election cycles.[3]

The nature of those preparations may be illustrated from a public source. As a result of his preparations for January 6, 2021, Vice President Pence *changed* the traditional language employed by Vice Presidents in opening the Joint Session. Traditionally, the Vice President opens the electoral vote counting by speaking these words: "After ascertaining that certificates are regular in form and authentic, the tellers will announce the votes cast by the electors for each state beginning with Alabama." *See*, *e.g.*, 151 CONG REC. at H84 (statement of Vice President Cheney presiding over Joint Session). But as a result of his preparations, Vice President Pence added the following words: ". . . which the Parliamentarian has advised me is the only certificate of vote from that State, and purports to be a return from that State, and that has annexed to it a certificate from an authority of that State purporting to appoint or ascertain electors," 167 CONG. REC. at H76 (statement of Vice President Pence presiding over Joint Session).

The Government grudgingly concedes that the former Vice President's acts on January 6 *were* legislative. Opp. 22 ("The Speech or Debate Clause could thus plausibly be construed . . . to confer legislative immunity to Pence for his conduct while presiding over the certification of the Electoral College vote on January 6."). Despite that concession, the Government asserts that "the

---

[3] During the 2000 and 2016 electoral vote counts, the Vice Presidents heard and overruled objections from House Democrats because those objections were not signed both by a Member and a Senator, as required by the ECA. 147 CONG. REC. H34-36 (daily ed. Jan. 6, 2001); 163 CONG. REC. H186-189 (daily ed. Jan. 6, 2017); *see* 3 U.S.C. § 15. In 2017, then-Vice President Biden even enforced the ECA's prohibition against argument during House Members' presentations of objections. 163 CONG. REC. at H186-88. Where an objection was signed both by a Member and a Senator, the Vice President allowed argument to go forward. In 2004, House Democrats brought a challenge to Ohio's electoral votes. 151 CONG. REC. H85-86 (daily ed. Jan. 6, 2005). Since the objection satisfied the ECA, former Vice President Dick Cheney ordered lawmakers back to their respective chambers for two hours of debate on the merits of the objection. *Id.*

grand jury subpoena does not seek any legislative acts evidence." Opp. 23, 25-26. In view of the

topics ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that assertion is dumbfounding. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮    That is why the former Vice President is requesting judicial guidance here: to obtain the protection of Speech or Debate immunity by way of a ruling that distinguishes protected legislative acts from acts that are not within the legitimate legislative sphere of protection. The uncontroversial possibility that the Government *might* ask questions falling outside the Clause's protection does not diminish the need for an immediate judicial resolution of the Clause's application and its scope, that is, of the immunity issue.

Communications made by Vice President Pence in preparation for his role presiding over the certification of the Electoral College vote on January 6 are protected legislative acts. *See* Mot. 10. He agrees that he cannot invoke (and he has not sought to invoke) the Speech or Debate Clause for activities that are "'casually or incidentally related' to the Electoral College certification proceeding," Opp. 26 (quoting *United States v. Brewster*, 408 U.S. 501, 528 (1972)). Mot. 7. But his efforts to educate himself about the arguments that could be made at the Electoral College certification proceeding, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ cannot fairly be regarded as only "casually or incidentally related" to his legislative duties on January 6. Mot. 10. It is a matter of public record that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ are *directly related* to the January 6 proceedings—that appears to be the very

12

reason the Government is seeking his testimony. His preparations are therefore immunized. "[A]ny probing of legislative *acts* is sufficient to trigger [the Clause's] immunity." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 419 (D.C. Cir. 1995) (emphasis in original).

Although the Government (mistakenly, *see* Opp. 22) contends that the Vice President's role was merely ministerial, it does not matter whether the Vice President's role on January 6 is regarded as "ministerial" or "ceremonial." As this Court put the matter in an analogous setting, "[w]hether the act was 'nondiscretionary' or 'ministerial' . . . is not relevant." *Fuller v. Harris*, 258 F. Supp. 3d 204, 206 (D.D.C. 2017) (extending absolute judicial immunity from damages to judicial clerks). What matters is whether the conduct involved legislative acts, and the Government *concedes* that the Speech or Debate Clause could "plausibly be construed . . . to confer legislative immunity to Pence for his conduct while presiding over the certification of the Electoral College vote on January 6," Opp. 22. If those acts were legislative, the Vice President is entitled to immunity for them and for his steps taken in preparation. *See* Mot. 7 (citing cases).

In any event, the Government's investigation seems premised on the theory that

But whether or not in the end the Vice President's January 6 role is deemed "ministerial," it was certainly legislative. And Vice President Pence's preparations for that role—including his consideration of arguments and his receipt of information relating directly to that role—were legislative acts.

13

## II.   The Government Mischaracterizes Former Vice President Pence's Positions.

### A.   The Speech or Debate Clause Does Not Compel the Former Vice President to Assert His Legislative Immunity.

The Government argues that former Vice President Pence is "plainly incorrect" in claiming that the Constitution requires him to assert the Speech or Debate Clause's "testimonial privilege." Opp. 15-16. The Government misstates former Vice President Pence's position. What the Motion actually says is that the Constitution imposes an obligation not to answer legislative-acts questions "under compulsion." Mot. 3. Vice President Pence has not said, and does not believe, that the Speech or Debate Clause bars him from *voluntarily* speaking about legislative acts.[4] *See* Mot. 3. And he has openly spoken about January 6, 2021, as the Government repeatedly points out.

But former Vice President Pence is presently under subpoena.



what he might do or have done absent a subpoena is not the issue before the Court. Former Vice President Pence has responded in the same way any other constitutional officer would feel obligated to respond, especially when his response will inevitably set a first precedent for future Vice Presidents.

his position is that he cannot be questioned about them unless and until there has been a contrary determination by a court of last resort.

---

[4] It is trivially true that no authority ever "compels" the ultimate possessor of an immunity to assert it, but that trivial truth does not help the Government here. The Government's point applies equally to absolute immunity held by actors in all branches of government. Presidents may elect not to assert their absolute immunity for official acts, but not to do so would pose risks to the effective functioning of the Presidency as an institution. *See Nixon v. Fitzgerald*, 457 U.S. 731, 748-54 (1982). Judges may elect not to assert their absolute immunity for judicial acts and defend against lawsuits, but that choice too would threaten the independence of the judiciary. *Forrester*, 484 U.S. at 225 (citing *Bradley v. Fisher*, 13 Wall. 335, 348 (1872)).

## B.   Former Vice President Pence's Memoir Is Irrelevant to the Constitutional Issue Before the Court.

The Government spills much ink over the former Vice President's memoir, Opp. 3-11, 15 n.4, 29-30, but the memoir is irrelevant to the Speech or Debate issue. Former Vice President Pence is not asserting a privilege from disclosing this or that bit of information. He is not asking the Court to exclude the memoir's contents from evidence on any privilege basis. Rather, he is asserting an immunity from Executive-Judicial testimonial compulsion. Former Vice President Pence was as free to write a book about his experiences as any other citizen and, more to the point, any Senator or Representative.[5] In writing that book, he was not "questioned in any other Place." U.S. Const. art. 1, § 6, cl.1. The suggestion that in writing a book or speaking to the press an author forfeits otherwise-applicable Speech or Debate immunity from compelled testimony is an instance of what philosophers call a "category mistake." Former Vice President Pence's account of his actions concerning January 6 was a *voluntary* disclosure—not coerced by the Executive Branch. It has no bearing on his immunity not to be *questioned* before the Executive or Judicial Branches.

The Government misreads *Gravel* and *Brewster* when it argues that former Vice President Pence's publication of a book somehow vitiates his immunity. *See* Opp. 29-30. In those cases,

---

[5] Dozens of sitting Members of Congress have written books (or given exclusive interviews for biographies) or spoken at news conferences, many of which disclose details relating to legislative acts, both undisclosed and already-disclosed. Author-Members include former Speaker Nancy Pelosi and January 6 Committee members Jamie Raskin, Adam Schiff, and Adam Kinzinger (whose book is due out later this year). *See, e.g.*, Susan Page, MADAM SPEAKER: NANCY PELOSI AND THE LESSONS OF POWER (1st ed. 2021); Jamie Raskin, UNTHINKABLE: TRAUMA, TRUTH, AND THE TRIALS OF AMERICAN DEMOCRACY (1st ed. 2022); Adam Schiff, MIDNIGHT IN WASHINGTON: HOW WE ALMOST LOST OUR DEMOCRACY AND STILL COULD (1st ed. 2021); Adam Kinzinger, RENEGADE (forthcoming); *see also* Edward Walsh & Juliet Eilperin, *Gore Presides As Congress Tallies Votes Electing Bush*, WASHINGTON POST (Jan. 7, 2001), https://www.washingtonpost.co m/archive/politics/2001/01/07/gore-presides-as-congress-tallies-votes-electing-bush/0461e40f-3317-4a7e-a1ad-2232aae304db/ (news conference). The idea that any of them lost Speech or Debate protection from compelled testimony by reason of these publications is risible.

the Court held that speeches delivered outside the Congress, *Brewster*, 408 U.S. at 512, and the publication of classified documents to the general public, *Gravel*, 408 U.S. at 626-27, are not legislative acts because they are not integral to the legislative process. Former Vice President Pence is not, however, asserting that his publishing a memoir and his publicly speaking about January 6 were integral to the legislative process and thus became legislative acts. The portions of *Gravel* and *Brewster* invoked by the Government are inapposite.

Throughout the Opposition, the Government seems to be *implying* that former Vice President Pence's memoir and public statements have effectively waived his Speech or Debate protection. But the Government, for good reason, never comes right out and says so. In *United States v. Helstoski*, a former Member of the House of Representatives appeared voluntarily before the grand jury numerous times. 442 U.S. 477, 479-80 (1979). The Supreme Court held that those appearances and the testimony he gave did not waive his Speech or Debate Clause protection. *Id.* at 490-91. The Court reasoned that, even if such a waiver were possible, it "can be found only after explicit or unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply . . . ." *Id.* There has been no waiver here.

## C. Former Vice President Pence Has Not Asserted Executive Privilege.

The Government also argues that the former Vice President is trying to have it both ways by asserting both executive privilege and the Speech or Debate Clause. Opp. 16. This contention is wrong as a matter of fact and law.

To be sure, the former Vice President has publicly opined that the Congress lacked authority to compel his appearance before the January 6 Committee. But there is no basis for any suggestion that former Vice President Pence actually asserted executive privilege before Congress. Executive privilege belongs to the President, not the Vice President. *See* Mot. 2. Only the

President can assert it before Congress.[6] And there is no record that former President Trump asserted such a privilege to block former Vice President Pence from appearing before Congress.

Regardless, there is nothing inconsistent in former Vice President Pence's positions relating to his obligations to appear and answer questions before the House and before the grand jury. As the Government's own authority points out, Vice Presidents belong in part to the Legislative and in part to the Executive Branch. Opp. 16. Nothing pertaining to *a President's privilege against Congress* nullifies *a Vice President's legislative immunity against the Executive and Judiciary.* The Government goes on to say that the Vice President's role in two branches "should not allow [him] to avoid questions . . . by identifying as an Executive Branch official when Congress seeks his testimony and a Legislative Branch official when the Executive Branch does so." Opp. 16. To be clear, the Vice President is not *identifying* as anything. He is invoking a constitutional protection adopted by the Framers and adapted to the legislative role of his office. Nothing more and nothing less.

## III.    The Government's Novel Suggestions About the Speech or Debate Clause's Scope and Effect Are Inconsistent with Governing Law.

The Government's Opposition makes a series of novel, one-time-only, arguments about the Speech or Debate Clause's scope and effect. These arguments are classic special pleading, unsupported by existing law and often inconsistent with binding precedent.

The Government invites the Court to limit the protective scope of the Speech or Debate Clause by arguing that it may not apply to a person who may escape punishment by the legislature.

---

[6] The Government refers to "Pence's outright rejection of Congress's efforts to interview him about January 6," Opp. 19, but the Government was not privy to, and knows nothing about, former Vice President Pence's communications with the Committee or the positions he took in those discussions, or whether he was invited to testify, or whether he actually declined an invitation to do so.

17

*See* Opp. 18-19. A Vice President, the Government argues, should not benefit from the Speech or Debate Clause because a Vice President cannot be disciplined or expelled by either House of Congress. But Senate rules can and do impose limits on a Vice President's presiding power. *See, e.g.*, Standing Rules of the Senate Rule XXII § 2. And it is hard to see what abuse would go unremedied by the absence of a punishment mechanism (the impeachment remedy is *not* absent). The mere possibility of Vice Presidential misbehavior cannot be enough. *See Rangel*, 785 F.3d at 24 (recognizing that "[a]lthough absolute immunity creates 'a potential for abuse,' that potential 'was the conscious choice of the Framers buttressed and justified by history'" (quoting *Eastland*, 421 U.S. at 510 (quotation marks omitted))); *Brewster*, 408 U.S. at 516 ("In its narrowest scope, the Clause is a very large, albeit essential, grant of privilege."). In any event, the Constitution does not say or imply (and it certainly does not guarantee) that a Vice President will escape all questioning in Congress, Opp. 19. Even if the Senate's internal rules have only limited effect on a Vice President, that does not detract one whit from the legislative character of his preparation for, and execution of, his legislative functions on January 6.

The Government also attempts to evade the application of the Speech or Debate Clause by supplying the Vice Presidency with a heretofore unknown "common-law legislative immunity [which] he enjoys when performing legislative duties." Opp. 23, n.7. The Opposition tries to assimilate, or analogize, that (presumably inferior) immunity to a *qualified* legislative evidentiary privilege. Opp. 20. There appears to be no precedent for applying this species of immunity to federal constitutional officers or any other federal officials. The purpose of this suggestion is to deprive the Vice President of the Speech or Debate Clause's coverage, and therefore its *absolute* protection. This attempt fails. First, as the case cited by the Government points out, common law legislative immunity is "similar in origin and rationale to that accorded Congressmen under the

18

Speech or Debate Clause." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 732 (1980). Second, as the Supreme Court said several times in *Bogan v. Scott-Harris*, that species of immunity also is "absolute." 523 U.S. 44, 48, 49, 54 (1999).

Third, the Government's effort to conflate this novel, Vice-Presidential-only, common law immunity with a qualified evidentiary privilege, Opp. 20, is pure legerdemain. Its purpose is to diminish the Vice President's protection by saying that this "qualified privilege is overcome where, as here, testimony is needed in connection with 'enforcement of federal criminal statutes.'" Opp. 20 (quoting *United States v. Gillock*, 445 U.S. 360, 375 (1980)). But when the curtain is pulled back, one sees that the Government's privilege-yields-to-criminal enforcement "principle[]," Opp. 20, applies specifically (and narrowly) in the setting in which *a state legislator* asserts *a state law privilege* in *a federal prosecution*. And in that very different case, as the Court said, "comity yields." *Gillock*, 445 U.S. at 373. In other words, the privilege-yields-to-enforcement conclusion was grounded in part on the fact that in a federal criminal prosecution the federal interest is stronger than the state interest ("comity yields") and in part on the fact that the separation of powers concerns implicated by the Speech or Debate Clause were altogether absent. *Id.* at 369-71. Those bases for the *Gillock* holding are not present here.

The Government's distinction between a legislative immunity and an "evidentiary privilege," which it says is "qualified, not absolute," Opp. 20, has no application to this matter.

Certainly, the Speech or Debate Clause creates such a protection, *see Fields*, 459 F.3d at 14, but the shield raised by former Vice President Pence's Motion is something distinct: an absolute immunity from testimonial compulsion, grounded in the Constitution's prohibition of "question[ing] in any other Place." U.S. Const. art. 1, § 6, cl.1.

19

The Government repeatedly characterizes the Speech or Debate Clause's application to former Vice President Pence as a "testimonial *privilege*" throughout its brief. Opp. 14, 25, 29-30 (emphasis added). Although the Speech or Debate Clause is sometimes said to provide a "testimonial privilege," *see Fields*, 459 F.3d at 14, the Supreme Court has made clear that the Clause's protection is an *immunity, see, e.g., Gravel*, 408 U.S. at 616; *Eastland*, 421 U.S. at 507. Former Vice President Pence seeks a ruling on the immunity issue.

The Government argues that, in the event the Court were inclined to apply the Speech or Debate Clause to the Vice President, the Speech or Debate Clause "may be applied 'less stringently'" where the evidence sought relates to potential criminal conduct by third parties. Opp. 25, 30. The "less stringently" language comes from the D.C. Circuit's opinion in the *Brown & Williamson* case. That expression affords the Government no help. First, in the paragraph above the "less stringently" language, *Brown & Williamson* read the *Gravel* case for the proposition that the "Speech or Debate Clause . . . privileged the Senator (and his aides) against testifying as to legislative acts*, even with respect to potential wrongdoing by third parties*." 62 F.3d at 419 (discussing *Gravel*, 408 U.S. at 622) (emphasis added). "[P]otential wrongdoing by third parties" is precisely the situation confronting this Court. Second, the D.C. Circuit has since made it clear that "[t]he bar on compelled disclosure is absolute, . . . and there is no reason to believe that the bar does not apply in the criminal as well as the civil context." *United States v. Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) (citing *Eastland*, 421 U.S. at 503). "The issue . . . is not whether the information sought might reveal illegal acts, but whether it falls within the legislative sphere." *MINPECO, S.A. v. Conticommodity Services*, 844 F.2d 856, 860 (D.C. Cir. 1988).

20

The Government also suggests that any legislative immunity afforded the Vice President by the Speech or Debate Clause should be "in proportion to the limited legislative role that the Vice President plays." Opp. 21. That notion is flatly inconsistent with well-established precedent. The Constitution did not create, and no case recognizes, a creature called "proportional legislative immunity." Where it applies, the Speech or Debate Clause provides an *absolute* immunity. *Eastland*, 421 U.S. at 503; *Rayburn*, 497 F.3d at 662 (Speech or Debate Clause "admits of no balancing"); *Rangel*, 785 F.3d at 24 ("Such is the nature of absolute immunity, which is—in a word—absolute."). It applies absolutely to all covered acts. When "activity is found to be in the legitimate legislative sphere, balancing plays no part." *Eastland*, 421 U.S. at 509 n.16.

Even so, the Government argues that the Clause would only cover "core" conduct that "would encompass only Pence's conduct within Congress while presiding over the certification of the Electoral College vote." Opp. 20-21. Although recognizing that the Supreme Court does not read the Speech or Debate Clause "strictly literal[ly]," the Government also argues that the Clause "should extend no further than core conduct covered by the Clause: speech or debate in either House." Opp. at 20-21 (citing *Gravel*, 408 U.S. at 625). But *Gravel* itself extended the protection to legislative staffers who *never* speak or debate in the Senate. 408 U.S. at 616-17. And the Government's idea of "core" conduct is inconsistent with both Supreme Court and D.C. Circuit case law. Neither Court draws a line between supposed "core" legislative acts (speech or debate on the floor) and less favored non-core legislative acts (occurring in other parts of the legislative sphere). *See, e.g.*, *Hutchinson*, 443 U.S. at 124; *Eastland*, 421 U.S. at 503-04; *McMillan*, 412 U.S. at 311-13; *Gravel*, 408 U.S. at 624-26; *Rangel*, 785 F.3d at 23-25; *Howard*, 720 F.3d at 945-46; *Fields*, 459 F.3d at 9-11; *MINPECO*, 844 F.2d at 860-61. Indeed, the D.C. Circuit has *rejected* the Government's distinction. *Fields*, 459 F.3d at 9-10 ("The Clause obviously covers core

21

legislative acts . . . . But the Supreme Court has long held that the Clause does more." (citations omitted)). As the D.C. Circuit has said, "[t]he pivotal distinction" is not between core and non-core legislative acts, but rather that between "legislative acts and non-legislative acts." *McCarthy v. Pelosi*, 5 F.4th 34, 41 (D.C. Cir. 2021); *Gravel*, 408 U.S. at 625.

And contrary to the Government's suggestion, "legislative acts" are not confined "within the four walls of either Chamber," Opp. 22 (citing *Hutchinson*, 443 U.S. at 124). That notion lacks any principled basis and evinces no understanding of established teaching in this area. "[I]t is long settled that the Clause's protections range beyond just the acts of speaking and debating." *McCarthy*, 5 F.4th at 38. As a host of cases illustrate, the Clause protects all legislative acts integral to the communicative processes by which covered persons participate in matters within the Senate's jurisdiction. *See, e.g.*, *Eastland*, 421 U.S. at 503-06; *McMillan*, 412 U.S. at 311-13; *Gravel*, 408 U.S. at 624-26; *Rangel*, 785 F.3d at 64-65; *Howard*, 720 F.3d at 946; *MINPECO*, 844 F.2d at 860-61. Many cases establish that the Speech or Debate Clause's coverage extends well beyond "the four walls of either Chamber." *See, e.g.*, *Gravel*, 408 U.S. at 628-29 (communications between a Senator and his aides); *Howard*, 720 F.3d at 946 ("staff members' preparations for legislative activities"); *MINPECO*, 844 F.2d at 861-62 (preparation of a statement for publication in the subcommittee report); *Schilling*, 2022 WL 4745988, at *7-8 (D.D.C.) (conversations between members of Congress and a committee aide that also include private parties and state officials in preparation for a hearing); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2017) (legislators' contacts with members of the public); *Rangel*, 20 F. Supp. 3d at 179 (receipt of information by a Member in preparation for a hearing).



[REDACTED] The Executive Branch cannot haul a legislative actor into court to testify about his conversations with third parties when those conversations are, as to the legislative actor, legislative acts. *Jewish War Veterans*, 506 F. Supp. 2d at 37, 57 (Speech or Debate Clause protects legislators' contacts with members of the public including lobbyists if contacts are in aid of legislative acts). As such, the Government cannot compel former Vice President Pence to testify about his conversations with others in preparation for January 6.

Former Vice President Pence agrees that, if a House Member were attempting to influence the Department of Justice, those acts would not be protected by the Speech or Debate Clause because they are not "related to the due functioning of the legislative process." *Gravel*, 408 U.S. at 625 (quoting *United States v. Johnson*, 383 U.S. 169, 172 (1966)); *Rayburn*, 497 F.3d at 659. But the inverse does not follow. A legislative actor's conversations to prepare for the Electoral College certification *are* related to the legislative process, even if those conversations [REDACTED]

[REDACTED].

The Government's suggestion that the Vice President made, or may have made, "promises"

[REDACTED], is a fantasy, and not a pretty one. [REDACTED]

[REDACTED] The Government's assertion that "[t]he Supreme Court has distinguished a

23

member's earlier acts from what follows later, such as how the member 'spoke, how he debated, how he voted, or anything he did in the chamber or in committee,'" Opp. 28 (quoting *Brewster*, 408 U.S. at 526), is unavailing. In *Brewster*, the Supreme Court permitted a bribery prosecution of a member of the Senate because the prosecution focused only on whether the member received compensation in exchange for a promise to vote a certain way, and not on how the member actually voted or why. 408 U.S. at 525-27. A legislative member's acts performed prior to "the legislative performance itself," Opp. 28, *are* protected by the Speech or Debate Clause when they are "an integral part of the deliberative or communicative processes," *Gravel*, 408 U.S. at 625. The promise to vote a particular way in exchange for a bribe is clearly not an "integral part" of anything that "the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625; *see also Brewster*, 408 U.S. at 526; *Rayburn*, 497 F.3d at 667. *Brewster*'s "bribery" rationale has no conceivable application to former Vice President Pence.

## CONCLUSION

For the reasons stated in former Vice President Pence's Motion to Quash and stated above, we respectfully ask the Court to rule (i) that former Vice President Pence's role as President of the Senate on January 6, 2021 afforded him the protection of the Speech or Debate Clause; (ii) that his actions in preparation for that day are likewise protected by the Clause; and, accordingly, (iii) that the grand jury subpoena is quashed to the extent it seeks testimony                        relating to his legislative acts performed in that role.

24

DATE: March 17, 2023                    Respectfully submitted,

                                        /s/ Emmet T. Flood
                                        Emmet T. Flood (D.C. Bar. No. 448110)
                                        Richard S. Cleary, Jr. (D.C. Bar No. 104834)
                                        Haylee Bernal Anderson (D.C. Bar No. 1765323)
                                        (admission pending)

                                        WILLIAMS & CONNOLLY LLP
                                        680 Maine Avenue SW
                                        Washington, D.C. 20024
                                        (202) 434-5000
                                        eflood@wc.com
                                        rcleary@wc.com
                                        handerson@wc.com

                                        *Attorneys for Former Vice President Michael R.*
                                        *Pence*