UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE GRAND JURY SUBPOENA
▓▓▓▓▓▓▓▓▓▓▓▓

Case No. ▓▓▓▓ (JEB)

Under Seal

*EX PARTE* TO GOVERNMENT AND PENCE ONLY

**MEMORANDUM OPINION**

Despite derision from occupants like John Adams and John Nance Garner, the Vice Presidency of the United States plays an important role in our constitutional structure. And the office sits at the center of today's privilege dispute. Former Vice President Michael R. Pence has filed a Motion to Quash a grand-jury subpoena requiring him to testify about matters related to the 2020 Presidential election and its aftermath, including the events of January 6, 2021. He contends that the Constitution's Speech or Debate Clause shields his testimony. The Court holds that, while the Clause does apply to the Vice President, it does not cover the vast majority of what the Special Counsel seeks to ask him about. The Court will thus largely deny the former Vice President's Motion.

I.   **Background**

A federal grand jury in the District of Columbia has been investigating whether any person or entity unlawfully interfered with the transfer of power following the 2020 election. See Press Release, Dep't of Just., Appointment of Special Counsel (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0. The Court need not go into the particulars of that investigation, as former Chief Judge Beryl Howell has canvassed them in great detail. See, e.g., ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓

1

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pence had presided over the joint session of Congress during which the House and Senate received electoral ballots cast in the 2020 Presidential election. In connection with that role, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In response, the former Vice President has filed this Motion to Quash. See ECF No. 5 (Motion to Quash). He argues that the Speech or Debate Clause of the United States Constitution shields his testimony because several lines of questioning implicate protected legislative acts. See U.S. Const. Art. I, § 6, cl. 1; Mot. at 1–2. The Government opposed the Motion, see ECF No. 13 (Opp.), and the Court heard argument on March 23, 2023. See Minute Entry of Mar. 23, 2023.

## II.    Legal Standard

The Supreme Court has made clear that "[a] grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." United States v. R. Enters., Inc., 498 U.S. 292, 298 (1991) (internal quotation marks omitted). "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," and thus "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." Id. at 300–01. The grand jury may seek information from "widely drawn" sources, and the duty to testify has been long recognized "as a

basic obligation that every citizen owes his Government." United States v. Calandra, 414 U.S. 338, 345 (1974); see also id. (noting "citizens generally are not constitutionally immune from grand jury subpoenas and that the longstanding principle that the public has a right to every man's evidence is particularly applicable to grand jury proceedings") (quoting Branzburg v. Hayes, 408 U.S. 665, 682, 688 (1972)) (alterations and internal quotation marks omitted).

"The investigatory powers of the grand jury are nevertheless not unlimited," but subject to constraints imposed by Federal Rule of Criminal Procedure 17(c), "which governs the issuance of subpoenas *duces tecum* in federal criminal proceedings." R. Enters., Inc., 498 U.S. at 299; see Calandra, 414 U.S. at 346 (observing that "the grand jury's subpoena power is not unlimited"). This rule provides that, on motion, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). A grand jury "may consider incompetent evidence, but it may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law." Calandra, 414 U.S. at 346. "Judicial supervision is properly exercised in such cases to prevent the wrong before it occurs." Id.

### III. Analysis

Pence's Motion raises a novel constitutional question: does the Speech or Debate Clause apply to the Vice President, and, if so, what acts does it cover? Based on Supreme Court and D.C. Circuit analysis, this Court holds that it does apply. The Court nevertheless also concludes that the Clause shields the former Vice President from only a few narrow lines of questioning. He must otherwise appear and testify.

#### A. Legal Framework

The Speech or Debate Clause of the United States Constitution provides:

3

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; <u>and for any Speech or Debate in either House, they shall not be questioned in any other Place.</u>

U.S. Const. Art. I, § 6, cl. 1 (emphasis added).

The Clause serves dual linked purposes. First, it protects the separation of powers. United States v. Johnson, 383 U.S. 169, 178 (1966) (noting Clause "reinforc[es] the separation of powers so deliberately established by the Founders"). Second and more specifically, it preserves legislative independence. That is, it ensures that Congress may "independently" perform the "legislative function the Constitution allocates to" it. Eastland v. U. S. Servicemen's Fund, 421 U.S. 491, 502 (1975) (collecting cases). The Supreme Court has "[w]ithout exception . . . read the Speech or Debate Clause broadly to effectuate [those] purposes." Id. at 501.

To serve those aims, the high court has long construed the Clause to protect more than just a Member's speech in legislative session. Kilbourn v. Thompson, 103 U.S. 168, 204 (1880) (recognizing Clause applies beyond "words spoken in debate" to things like "written reports," "resolutions," "voting," and other "things generally done in a session of the House by one of its members in relation to the business before it"). It has read the Clause broadly to protect all "legislative acts" a Member might perform. Gravel v. United States, 408 U.S. 606, 625 (1972) (formatting modified); see also United States v. Brewster, 408 U.S. 501, 512 (1972). The Court has elaborated that activities are protected "legislative acts" if they are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction

4

of either House." Gravel, 408 U.S. at 625. Examples of legislative acts include speaking on the floor, introducing and voting on bills, preparing committee reports, and participating at committee hearings. See Doe v. McMillan, 412 U.S. 306, 311 (1973); Gravel, 408 U.S. at 625–26; Johnson, 383 U.S. at 184–85.

Not every task a legislator preforms, however, will qualify as a legislative act. The Court "has repeatedly insisted that the Speech or Debate Clause is subject to 'finite limits.'" McSurely v. McClellan, 553 F. 2d 1277, 1285 (D.C. Cir. 1976) (quoting Doe, 412 U.S. at 317). Because nearly everything legislators do has some nexus to legislation, the Court has feared that a broadly sweeping rule would turn Senators and Representatives into "super-citizens." Brewster, 408 U.S. at 516. It accordingly has emphasized that the Clause does not shield legislators from "inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." Id. at 528; see also Gravel, 408 U.S. at 625 ("That [Members] generally perform certain acts in their official capacity as [Members] does not necessarily make all such acts legislative in nature."). Examples of unprotected conduct include political activities, such as making public speeches, sending newsletters, and publishing books, or lobbying executive-branch agencies on behalf of constituents or otherwise. See Doe, 412 U.S. at 315–16; Gravel, 408 U.S. at 625–26; Brewster, 408 U.S. at 512. In all cases, the touchstone is whether something is so "integral" to the legislative process that it is properly considered a "legislative act." Gravel, 408 U.S. at 625.

One contested boundary concerns the extent to which the Clause protects a legislator's preparatory communications; in other words, which types of preparations are so "integral" to Members' actions in the body as to themselves qualify as covered legislative acts? A version of this question, regarding whether the Clause protects "informal legislative fact-finding by

individual members of Congress," is currently pending before the D.C. Circuit. In re Sealed Case, No. 23-3001 (D.C. Cir. Feb. 16, 2023) (*per curiam* order). For present purposes, this Court notes two types of preparatory acts that the Supreme Court has definitively held do not qualify. First, it has concluded that accepting a bribe in advance of a floor vote is not a legislative act. Brewster, 408 U.S. at 526 ("Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act. It is not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of a legislator."). Second and relatedly, the Supreme Court has held that "[p]romises by a Member to perform an act in the future are not legislative acts." United States v. Helstoski, 442 U.S. 477, 489 (1979).

In determining to whom the privilege applies, the key question is the nature of "the act presented for examination, not the actor." Walker v. Jones, 733 F.2d 923, 929 (D.C. Cir. 1984). Our high court has accordingly read the Clause as applying beyond just the "Senators and Representatives" its text mentions. See Gravel, 408 U.S. at 617 (rejecting "literalistic approach" to Clause's text). The Clause today also protects Members' personal staff, id. at 616–17, as well as committee staff and other legislative aides. See Eastland, 421 U.S. at 507; Doe, 412 U.S. at 309; see also Rangel v. Boehner, 785 F.3d 19, 24–25 (D.C. Cir. 2015).

Where it applies, the Clause provides "three distinct protections." Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives, 720 F.3d 939, 946 (D.C. Cir. 2013). First, it grants Members civil and criminal immunity for their legislative acts. Eastland, 421 U.S. at 503, 510–11. Second, it contains an evidentiary privilege barring use of legislative-act evidence against a Member. Helstoski, 442 U.S. at 487. Third, and most relevant here, it creates a testimonial privilege guaranteeing that Members "may not be made to answer" questions about their legislative acts. Gravel, 408 U.S. at 616. In the D.C. Circuit, this testimonial privilege also

includes a broader non-disclosure privilege that prevents the Executive from reviewing privileged materials without the Member's consent. United States v. Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515, 497 F.3d 654, 663 (D.C. Cir. 2007).

B. General Application to the Vice President

So, at the end of the day, is the Vice President ever covered or not? Under the Supreme Court's functional analysis, that task requires the Court to decide whether he performs any "legislative acts" that the Clause would cover. Drilling down, the Court must assess whether the Vice President (1) participates in any "matters which the Constitution places within the jurisdiction of either House"; and, if so, (2) whether any of his acts form "an integral part of the deliberative and communicative processes" by which he participates in those matters. Gravel, 408 U.S. at 625.

The answer to both questions is yes. First, the Constitution vests the Vice President with specific roles in the legislative process. It directs that he "shall be President of the Senate," with the power to cast tiebreaking votes in that chamber. See U.S. Const. Art. I, § 3, cl. 4. It also instructs that he presides over Congress's counting of the electoral votes in a joint session. Id., amend. XII; see 3 U.S.C. § 15. Each role constitutes participation in matters that the Constitution places beneath the legislative umbrella.

Second, the Vice President unquestionably takes actions that form "an integral part of the deliberative and communicative processes" when he participates in those matters. Perhaps most clearly, as mentioned above, he votes when the Senate is deadlocked. And, as relevant here, in his presiding role in the electoral certification process, the Vice President opens the electoral-vote certificates, announces the vote tally, calls for objections, and otherwise oversees logistics on the floor. See 3 U.S.C. § 15 (explaining these tasks). Past Vice Presidents have performed

additional related tasks as well, such as recognizing Members and ensuring that objections take the proper form. See Cong. Res. Serv., RL32717, Counting Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by Members of Congress (updated Dec. 8, 2020), at 5. Pence in fact lists in his Reply a series of such acts that he performed during the January 6th joint session. See ECF No. 15 (Reply) at 10 n.1 (describing tasks including calling chamber to order, recognizing Members, ruling on objections, ordering adjournment of chamber, and declaring the final vote). Those tasks are all integral to the operation of the electoral-certification session. Under the Supreme Court's functional analysis, then, the Clause applies to the Vice President during his performance of certain acts. The Court in Section II.C below addresses the more difficult question of whether the testimony sought pertains to acts integral to the Vice President's legislative functions.

### 1. *Government's Counterarguments*

The Government's counters are unpersuasive. First, it swings big: it contends that the Clause cannot apply to the Vice President at all because he sits in the executive branch, not the legislative branch. See Opp. at 1. This is a formalistic argument based on the actor, not the act. But see Walker, 733 F.2d at 929 (requiring opposite). The argument also fails on its own terms because the Vice President is a creature of both Article I and Article II — a hybrid legislative and executive actor.

Courts have not had frequent occasion to comment on the Vice President's constitutional locus, but the Office of Legal Counsel has repeatedly emphasized the role's duality. In a memorandum about the scope and limits of his ability to participate in executive-branch business, OLC described the role this way: "Perhaps the best thing that can be said is that the Vice President belongs neither to the Executive nor to the Legislative branch but is attached by

Case [redacted] Filed 03/27/23 Page 9 of 19

the Constitution to the latter." Participation of the Vice President in the Affairs of the Executive Branch, 1 Op. O.L.C. Supp. 214, 222 (1961). Eight years later, then-Assistant Attorney General William Rehnquist echoed the sentiment in a memorandum about whether the Vice President could be appointed to an independent commission. He there observed that "[f]or some purposes" the Vice President "is an officer of the Legislative Branch," and he concluded that "the Vice President has now assumed a particular place in Government in which his status may be characterized as Legislative or Executive depending on the context." Memorandum from William H. Rehnquist, Advisory Commission on Intergovernmental Relations (Feb. 7, 1969) at 2; see also Roy E. Brownell II, A Constitutional Chameleon: The Vice President's Place within the American System of Separation of Powers, 24 Kan. J.L. & Pub. Pol'y 1, 4–5 (2014). The analytic through-line is that the Vice Presidency is a dual executive and legislative office.

This Court takes the same view. Consistent with this logic, it concludes that the Vice President qualifies as a legislative actor in certain circumstances. See U.S. Const. Art. I, § 3. The Government's structural argument thus not only adopts the wrong analytic framework but also rests on an incorrect view of the nature of the Vice Presidency.

The Government's contentions related to the purpose of the Clause are unavailing for the same reason. They assume that the Vice President is solely an executive-branch actor and thus has no need for independence from that branch. As just discussed, however, the Court disagrees with that characterization. The Vice President has a legislative role and while serving in that capacity has constitutional breathing room from the President. Indeed, the Constitution does not provide for a mechanism by which a President may remove a Vice President. It thus does serve separation-of-powers values to shield a Vice President acting in a legislative role from executive and judicial inquiry.

The Government also contends that, textually, the Vice President is not a "Senator or Representative" within the meaning of the Clause. See Opp. at 17. It concedes that Gravel has extended the Clause beyond its text to reach Members' staff because such staff act as the "agent or assistant of a sitting Senator," but it argues that because the Vice President is not such an agent, the Clause does not cover him. See Opp. at 18. Gravel was not so limited. The Clause has subsequently been read to cover all manner of legislative actors, including those who work for committees or for the chamber as a whole. See, e.g., Eastland, 421 U.S. at 507. The Court declines to be the first in generations to force a literal reading of the Clause's text. Finally,

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████

As a fallback position, the Government urges that, even if the Vice President does enjoy the privilege, he holds a weaker form of it. The Government suggests in particular that the privilege covers the Vice President's conduct only within the four walls of the Capitol but yields elsewhere. See Opp. at 20–22. This too lacks basis. The Supreme Court has repeatedly instructed that the privilege where it applies is "absolute." Eastland, 421 U.S. at 503. And the Government offers no persuasive reason to depart from that analysis and create from whole cloth a diluted form of the privilege just for the Vice President.

As a corollary, the Government adds that, again assuming the privilege applies to the Vice President, none of his conduct here is covered because his role at the joint session was purely ceremonial. See Opp. at 27. In other words, while he may be more fully cloaked with the privilege when casting a tiebreaking vote, the same is not true for his role on January 6. For this largely ministerial role, the Government contends, any available privilege would be weaker.

10

There is more force in this position, but the Court finds an act-by-act review, which bears in mind the narrowness of the former Vice President's role, to be more prudent than announcing a sliding scale that adjusts the strength of the privilege depending upon the type of role he is performing.

### 2.  Vice President's Proposed Extension

The former Vice President, for his part, seeks a broader rule. He suggests that conduct "arising from the legislative sphere" is protected, which includes "communications with persons outside the legislative branch concerning legislative activity." Mot. at 4, 7. He accordingly seeks a capacious holding that everything that he characterizes as "preparations" preceding January 6th is covered by the Clause. This proposal would vastly expand the reach of this provision. Acts only "incidentally related to legislative affairs" do not qualify for its protections. Brewster, 408 U.S. at 528. A "nexus to legislative functions" is not enough; conduct is not protected if it is merely "relating to," as opposed to "part of," the "due functioning of the legislative process." Id. at 515–16, 528. The Clause, in sum, requires a tighter connection than the former Vice President suggests between his January 6th functions and any purportedly protected conversations.

* * *

The Speech or Debate Clause accordingly covers the Vice President in certain circumstances — that is, when he performs acts integral to a legislative function. The Court's task then becomes to determine which of his actions around the January 6th certification fall into that category. It turns there now.

11

C. <u>Application Here</u>

The Office of Special Counsel has identified ▮▮▮ topics on which it seeks to question Pence. Many on their face have nothing to do with his role in the January 6th certification process and have no ostensible connection to any other legislative function. ▮▮▮



Recall that the Clause protects only "legislative acts," which are matters "integral" to a constitutionally or statutorily prescribed legislative function. <u>Gravel</u>, 408 U.S. at 625. Acts that are "political in nature rather than legislative" are not protected. <u>Brewster</u>, 408 U.S. at 512.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███ The Court's task, accordingly, is to delineate which of the ████████████ ██████ the Clause protects and which it does not. It will begin with a discussion of the principles set out in <u>Brewster</u> and <u>Helstoski</u> and then apply the law to these topics.

13

1. *Preparation versus Exhortation to Commit Unlawful Act*

As the Court recognized earlier, the general question of which sorts of preparatory conversations are legislative acts that the Clause shields is close, contested, and currently on appeal. The Supreme Court's cases, however, provide a clear path through the thicket that we encounter here. They hold that the Clause does not protect conversations whose principal function is to exhort a legislator to act unlawfully or *ultra vires*, meaning beyond the bounds of the legislator's lawful authority. Because such conversations are not integral to the performance of a legislative function, they are not legislative acts and thus not covered.

That rule follows from the Court's decisions in Brewster and Helstoski. In Brewster, the Court held that the Clause did not protect Senator Daniel Brewster from prosecution for taking a bribe prior to voting for a bill. Notably, the Court could have but did not hold that the conversation in which the bribe occurred was preparatory to the performance of a legislative act and so categorically beyond reproach. Instead, it embraced a broader proposition: where the legislator was being asked to do something unlawful, the conversation in which that unlawful request occurred was not appropriately viewed as preparation for the vote. That conversation was thus not a legislative act and so not shielded by the Clause, even if Senator Brewster's ultimate vote and his corrupt reasons for it would be. Brewster would have come out the other way were it otherwise. See also Hr'g Tr. (Mar. 23, 2023) at 34:10–12 (Counsel for former Vice President: "In Brewster, the Court is clear that the conversation that Brewster engaged in was no part of a legislative act.").

From there, it is an easy extrapolation that Brewster's rule concerning illegal behavior applies equally to conversations seeking other *ultra vires* actions, as neither is integral to performance of a legislative function. It also applies equally regardless of whether the Member

14

bows to the pressure or not because the Member's ultimate act does not bear on whether the conversation was objectively integral preparation. All told, Brewster reflects the commonsense proposition that the Clause does not protect conversations whose principal purpose is to convince a Member to do something the Member cannot lawfully do.

Helstoski reflects this principle as well. In that case the Court held that, for admissibility purposes, "[p]romises by a Member to perform an act in the future are not legislative acts." 442 U.S. at 489. Read for all it is worth, that case could suggest a broad rule that the Clause protects no conversations regarding future legislative acts. But taken in concert with Brewster, the better view is that the Clause does not, at a minimum, shield attempts to extract promises to act unlawfully or *ultra vires* — in other words, efforts to exhort a legislator to act in ways the legislator cannot.

This rule also comports with Gravel and other precedent. The Clause protects only acts "integral" to a legislative function. Gravel, 408 U.S. at 625. Certain preparatory acts are surely integral to a Member's subsequent performance — drafting a speech before speaking on the floor, preparing legislative text before introducing a bill, and the like. But it is in no way preparatory, much less integrally so, for a Member to be asked to do something illegal or outside her lawful authority. Such a request does not conceivably aid a Member in deciding how to perform a constitutional function such as introducing legislation, speaking, or voting. Those conversations therefore are not legislative acts, and so the Clause does not shield them.

Conversations about *ultra vires* action are thus far removed from harder issues, ■■■ ■■■■■■■■■■■■■■■■■■■■■■ which concern to what extent the Clause protects Members when they conduct various types of informal factfinding. Those questions turn on competing views of whether certain preparations were so critical to the performance of an

15

ultimate legislative function that they should be protected, too. Here, by contrast, Brewster offers the sensible and workable rule that conversations are not preparatory where their principal function is to urge acts that are unlawful or exceed a Member's authority.

2. *Application to Particular Conversations*

Having set out the ground rules, the Court may now get down to business. It assesses specific topics ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In order to provide guidance to the parties going forward, it notes several areas within those categories that the privilege does or does not cover.

a. Not Covered

The bottom line is that conversations exhorting Pence to reject electors on January 6th are not protected. They fall under Brewster's rule that communications urging a legislator to act unlawfully or *ultra vires* are not preparatory — or at most are only incidentally so — to a legislative function.

There is no dispute in this case that Pence lacked the authority to reject certified electoral votes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See generally 3 U.S.C. § 15. Indeed, as Pence described in his book, he "never believed that the vice president's role [on January 6th] was anything more than ceremonial." Opp., Exh. S (excerpts from So Help Me God) at 434.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Case 1:23-mc-00035-JEB   Document 11-5   Filed 06/09/23   Page 17 of 19
Case [redacted] Filed 03/27/23   Page 17 of 19



Second, the former Vice President's rule would be far too broad. It would protect any conversation that served in any part, even if only incidentally, to educate a legislator on a matter

17

before him. That rule would cover any conversation with anybody with an opinion. Appearances at town-hall debates or on talk shows could equally well expose a Member to counterarguments she might face on the floor. Under the former Vice President's rule, it seems all would be covered. That cannot be the rule. See, e.g., Brewster, 408 U.S. at 528 (Clause does not cover activities only "incidentally related to legislative affairs"). Instead, the touchstone is whether these conversations were integral to the Vice President's performance of his legislative duties. The Court holds that they were not. Their objective role in preparing him to perform his self-admittedly ceremonial duties was incidental at best and certainly not integral.

The Government consequently may question Pence about ██████████████ ██████████████ because ██████████████ were not integral to his performance of his legislative function on January 6th.

### b. Covered

By contrast, the Court notes two areas of preparation that it finds are protected by the Clause because they were integral to the former Vice President's performance of his legislative duties.

First, the Clause covers Pence's speech on the floor of the Senate that day and his precedent acts in which he directly prepared those remarks. As part of his constitutionally and statutorily prescribed functions, Pence announced aloud each slate of electors as they were delivered to and opened on the floor. The former Vice President described working with the Parliamentarian of the Senate to adjust the wording of that announcement. So Help Me God at 449. That announcement constituted a formal legislative act, and its direct preparation was integral to its performance. ██████████████████████████████ ██████████████████████

Second, the Clause covers internal staff advice between Pence and his aides that directly advised the former Vice President on the scope of his authorities on January 6th. Pence described how, shortly after the election, he asked his chief counsel to write a memorandum advising him on his authorities and responsibilities that day. So Help Me God at 433–34. That memorandum constitutes preparation that was integral to Pence's performance of his role on January 6th, and so it is covered as well.

[redacted]

\* \* \*

The privilege the Court applies today is "broad enough to insure the historic independence of the Legislative Branch" but "narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members." Brewster, 408 U.S. at 525. The Court's holding thus shields acts integral to the former Vice President's performance of his legislative function, but not those that were unrelated to or only incidentally preparatory for those functions. That, the Court believes, is the proper balance.

**IV.  Conclusion**

For the foregoing reasons, the Court will deny in large part the former Vice President's Motion to Quash. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: March 27, 2023