*  THIS PAGE LEFT INTENTIONALLY BLANK  *


SEALED MATTER ENCLOSED


AUTHORIZED PERSONS ONLY

```
1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2
     IN RE:                             Grand Jury
3    GRAND JURY SUBPOENA               ████████████████████

4

5    UNITED STATES OF AMERICA          March 23, 2023
              Interested Party,
6                                       Washington, D.C.
     MICHAEL PENCE
7             Interested Party,

8

9

10   ------------------------------------------------------------
                          SEALED PROCEEDING
11            BEFORE THE HONORABLE JAMES E. BOASBERG
              UNITED STATES DISTRICT COURT CHIEF JUDGE
12
     APPEARANCES:
13

14   APPEARANCES:

15   FOR THE UNITED STATES:     James Pearce, Esquire
                                Thomas Windom, Esquire
16                              John Pellettieri, Esquire
                                Special Counsel's Office
17                              950 Pennsylvania Avenue Northwest
                                Room B-206
18                              Washington, D.C.20530

19                              Cecil Woods VanDevender, Esquire
                                United States Attorney's Office
20                              719 Church Street
                                Suite 3300
21                              Nashville, Tennessee 37203

22

     FOR MICHAEL R. PENCE:      Emmet T. Flood, Esquire
23                              Richard S. Cleary, Jr., Esquire
                                Williams & Connolly
24                              680 Maine Avenue Southwest
                                Washington, D.C. 20005
25
```



REPORTED BY:                     �█�█�█�█�seg, RMR, CRR
                                 Official Court Reporter
                                 333 Constitution Avenue Northwest
                                 Washington, D.C. 20001

```
 1   The following proceedings began at 11:06 a.m.:
 2            THE COURTROOM DEPUTY:  Good morning.
 3            Your Honor, the courtroom has been sealed and locked.
 4   We are here in regard to grand jury subpoena GJ ████████████
 5   ███████████████████████████████████████████████████████████
 6   ██████████████████████.
 7            Beginning with counsel for the government, please
 8   state your name for the record.
 9            MR. PEARCE:  Good morning, Your Honor.  James Pearce
10   on behalf of the United States.  Also with me at counsel table
11   are Thomas Windom, John Pellettieri, and Cecil VanDevender.
12   Thank you.
13            THE COURT:  Okay.  Thank you.
14        ██████████████████████████████████████████████████████
15        ████████████████    ████████████████████      █████████
16   ████████████    ████████████████████████████████████████
17   ███████████████████████████████████████████████
18        ██████████████    ██████████████████
19        ██████████████████████████████████████
20            MR. FLOOD:  Emmet Flood from Williams & Connolly, Your
21   Honor.  And my colleagues with me today are Richard Cleary and
22   Haylee Bernal Anderson.
23            THE COURT:  Thank you so much.  Welcome.
24            Thank you, everybody, for your fine work on these
25   interesting issues. █████████████████████████████████████████
```



```
 1   ████████████████████████████████████
 2   ██████████████████████████████████████████████████
 3   ██████████████████████████████████████████
 4   ████████████████████████████████
 5          ███████████████████████████████████████
 6   ███████████████████████████████████████
 7   ████████████████████████████████████████████
 8   █████████████████████████████████████████
 9   ████████████████████████████████████████████████
10   █████████████████
```

11          Anything preliminary that I need to know that's

12   different?  And I guess it might be helpful for the government

13   to tell me, if I permit the testimony to go forward, is there a

14   date that you have in mind for that?  █████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████     ██

17   ████████████████

18          MR. PEARCE:  ███████████████████████  ████████████

19   █████████████████████

20          THE COURT:  Thanks.  Anything else preliminary for the

21   government?

22          MR. PEARCE:  No, Your Honor.

23          █████████  ████████████████████████████

24   ████████████████

25          ████████████  ████████████████



1          THE COURT:  Thank you.

2          Mr. Flood?

3          MR. FLOOD:  Nothing, Your Honor.

4          THE COURT:  Thank you.





```
1  ██████████████████████████████████████████
2  ██████████████████████████████
3       ██████████████████████████████████████
4  ██████████████████████████████████
5       ████████████   ████████████████████████████████
6  ████████████████
7       ████████████   ████████████████████
8       ████████████   ██████████████
9       ████████████   ██████████████████████
```

10        THE COURT:  Please.  Let's just wait for the courtroom

11  deputy.

12        MR. FLOOD:  There's a bag here.

13        THE COURT:  Thanks.

14        Okay.  I am going to let you go first, Mr. Flood.  And

15  again, I appreciate your briefing on this.  It certainly raises

16  interesting issues.

17        And so what I would like to start with is this.  Let's

18  assume for the moment that I find that the Vice President is

19  covered by the speech and debate clause and the question is to

20  what extent that coverage extends.

21        So why wouldn't it be appropriate that the coverage

22  for his ceremonial duties including certification of electors

23  should be narrower than the coverage for acting as, say, a

24  tie-breaking vote in the Senate?  Isn't there a reason to

25  distinguish the scope of the privilege in those circumstances?

1          MR. FLOOD:  I think there's not, Your Honor.  If Your

2     Honor finds that the Vice President is covered by the speech or

3     debate clause privilege, I think that the next question is what

4     is encompassed within that.  And I don't think that it's a

5     question of sort of relevant scope internal to the coverage,

6     but rather, is there coverage at all for something other than

7     the actual conduct that he engaged in on January 6.

8          And may I say, Your Honor, without -- I don't intend

9     by my response to endorse the idea that what he did on

10    January 6 was ceremonial and only ceremonial.  I know he's made

11    some remarks to that effect, but that's not our litigating

12    position, that he was not speaking formally or, you know, in a

13    judicial admission type inviting setting.

14         So I think what we seek is a clear rule from Your

15    Honor.  And because it's an issue of first impression, I think

16    there are at a minimum two parts to that.  One is whether a

17    Vice President can be covered at all.  As we concede the words

18    Vice President do not appear in the relevant clause.

19         If he can be, then the question is, all right, how far

20    does that extend?  And our argument there is a pretty

21    straightforward one.  It extends to all legislative acts as

22    that is defined in Gravel and succeeding cases.  And if it

23    extends to legislative acts, then we think Your Honor can draw

24    a bright line that will separate the sheep from the goats, all

25    right, on the coverage question.  And while there may always be

```
 1    close cases, we think that, you know, that would go very far
 2    toward resolving the whole thing.
 3            THE COURT:  So again, assuming that there is coverage,
 4    and let's go even farther and assume that there is not a
 5    diluted privilege for his January 6 type acts, so the question
 6    is, and I agree with you is -- well, the law is clear under
 7    Gravel that the clause protects legislative acts which are
 8    matters integral to a constitutionally or statutorily
 9    prescribed legislative function.  And I think we all agree on
10    that, even if the government doesn't necessarily agree he's
11    covered at all.
12            But assuming he is covered, it seems that there are
13    some ███████████ categories that are interesting to discuss, but
14    there are a bunch which I would trust you would concede are not
15    covered.  I mean, for example, and I don't -- it might be
16    helpful, Mr. Flood, if you had the category list in front of
17    you.
18            MR. FLOOD:  I do, Your Honor.
19            THE COURT:  Great.  So, you know, ███████████████
20    ███████████████████████████████████████████████████████
21    ███████████████████████████████████████  I mean, how do those
22    relate to a legislative act?
23            MR. FLOOD:  I think the short answer, Your Honor, and
24    I acknowledge it's a general one, is it depends on the
25    question.  ████████████████████████████████████
```

1   ███████████████

2          ██████████   ████████████

3          ██████████   ██████████████

4          ██████████   ████████   ██████████████████

5   ██████████████████████████████████████

6   ██████████████████   ████████████████████████

7   ████████████████████████████████████

8   ████████████████████████████████   ████

9   ██████████████████████████████

10         MR. FLOOD:  Your Honor, if I could answer by way of an

11   illustration.  If the Vice President were before the grand jury

12   and was asked, tell me about the experience of your day on

13   November 3, Election Day 2020, the answer to that is there is

14   no speech or debate privilege for that, and obviously we

15   wouldn't assert it.

16         If by contrast the Vice President was asked this, in

17   the course of your preparation for January 6, did you discuss

18   as part of that preparation the events of November 3, 2020, and

19   to the extent it's implicated by the preparation function, then

20   it might well be covered.  But I think that's the kind of thing

21   that probably has to be done question by question.

22         THE COURT:  ██████████████████████

23   ████████████████████████████████████

24   ██████████████████████   ████████████

25   ████████████████████████████████████



```
13        So if they urged him to act unlawfully and in a way he
14   knew was unlawful, how is that an integral legislative act?
15        MR. FLOOD:  I think, Your Honor -- well, let me break
16   it into two parts.  The protection attaches to the legislative
17   actor.  That's Vice President Pence.  If someone else urges him
18   to act unlawfully but he doesn't reciprocate or there's no
19   cause to think he reciprocated, which is to say it's not like
20   the Brewster case in which the issue was the offer and
21   conversation about the acceptance of a bribe by a Member, in
22   that case, the wrong done by your hypothesis, Your Honor, by
23   the cajoling actor does not change the scope of the coverage of
24   the privilege.
25        The Eastland case, the Court is very frank about this,
```

```
1   not this specific hypothetical, of course, but that sometimes
2   the speech or debate clause will extend in a way that's
3   unsatisfactory.  And there are even cases that, names don't
4   come to mind right now, but as the Court has said several
5   times, that the speech or debate clause will protect conduct
6   where it applies which in another setting might be illegal.
7           THE COURT:  Sure, but let's go back to Brewster.
8           So if the Senator had said no, are you saying he
9   couldn't be summoned to testify about the attempted bribe?
10          MR. FLOOD:  I think that is our position, Your Honor.
11          THE COURT:  But the whole point of Brewster is that
12  taking a bribe is not a core legislative act.  It's not
13  integral to the legislative function.  And similarly, I'm not
14  sure how listening to a proposed bribe could be part of one
15  either.
16          MR. FLOOD:  Well, Your Honor, I think there is some
17  art in your question that I appreciate, and I would like to
18  break it down a little bit.
19          In Brewster, there was no dispute that what we were
20  talking about was a bribe and that the Senator had -- or I
21  can't remember if it was a Senator or Member --
22          THE COURT:  It was a Senator.
23          MR. FLOOD:  -- had reciprocated.  ██████████
24  ███████████████████████████████████████████  And without
25  more, all right, I think we are not on all fours with Brewster.
```

1   And I think Brewster is in significant tension with Gravel and

2   other cases.  That's a same-day decision, I think, but other

3   cases.

4         If the legislative actor ███████████████████████████

5   ████████████████████████████████████████████, I think we

6   fall outside Brewster and under the coverage of many other

7   cases which say that legislative acts, and these are by our

8   view legislative acts, are protected even if the result is

9   something unsatisfactory.

10        There is a case from the circuit in 2009 in which then

11  Judge Kavanaugh says in a separate writing, he said, courts

12  have to respect the constitutional balance between the

13  executive and the legislative regardless of the perceived needs

14  of the moment.  And I think if, to use Your Honor's word, mere

15  listening takes you outside the clause, then, you know, every

16  day there are Senators and Members listening to lobbyists and

17  being asked to do things, some of which I don't think we can

18  rule out may be a borderline illegality.  And if the mere

19  suggestion at the front that there may have been illegality on

20  the part of the third party actor, not the legislative actor,

21  is enough to breach the privilege, the privilege is effectively

22  gone for testimonial compulsion.  That's our position.

23        THE COURT:  It's only gone if -- I think that's a

24  rather sweeping statement.  It's gone for illegal, proposed

25  illegal and unlawful and ultra vires acts.  You are right, it

1    would be gone for that.  How does that vitiate the privilege?

2    The privilege remains for anything that's lawful.

3         But how is it integral to the legislative function to

4    be offered bribes to be -- well, I mean, even offered bribes

5    and that alone.  I think to sort of say that Brewster only

6    applies to accepted bribes, I understand there's a distinction,

7    but I think that you are cutting that awful thin there.

8         MR. FLOOD:  With respect, Your Honor, I think I am

9    cutting it in the place where the Court cuts it, the Supreme

10   Court cuts it.

11        If mere listening can subject a legislative actor to

12   compel testimony, with all respect, Your Honor, I think that

13   would sweep very, very broadly.

14        THE COURT:  So in other words, so the answer is that

15   people should bribe with impunity because if it's accepted,

16   they are all set.  If it's declined, no one can ever tell them

17   about it, no one can ever say anything about it.

18        MR. FLOOD:  I don't think that follows, Your Honor.  I

19   don't think that no one can ever say anything about it.  A

20   Senator would have the option to say, wait a minute, this is so

21   bad, this is so awful, I'm going to march down to the field

22   office in the FBI and report it.  I mean, it's entirely within,

23   you know, the discretion of that actor to do that kind of

24   thing.  I don't think it leads to a bribe with impunity --

25        THE COURT:  But if that Senator says I, like Vice

1    President Pence, need to stand up for the breadth of the speech
2    or debate, so I'm only shooting myself in the foot if I go down
3    to the FBI office.

4        MR. FLOOD:  I don't agree with that, Your Honor,
5    because that's a voluntary act.  To me, that's somewhat
6    analogous to writing a book or making a public statement.
7    Legislative actors can say, can and do say all kinds of things
8    that might be subject to the privilege.  And an attempt to
9    bribe might very well fall in that category.  But here, that's
10   the difference between a voluntary act and compulsion.

11       And I also think there's an element in Your Honor's
12   question where there's a possible cart before the horse
13   problem.  ████████████████████████████████████████
14   ████████████████████████████████████████████████████
15        ████████████████  ████████████████████████████████
16   ████████████████  ████████████████████████████
17        ████████████████  ████████████████████████████████
18   ████████████████████████████████████████████████████
19   ████████████████

20       THE COURT:  But that they were asking him to do
21   something he could not do, he did not have legal authority to
22   do.

23       MR. FLOOD:  Correct.  But I think there is, if I may
24   say, Your Honor, unlawful and unlawful.  And in this setting
25   where the grand jury investigates and when they do charges,

1   violations of Title 18 and other laws, that's one kind of

2   thing.  There's another kind of, you know, unlawfulness which

3   is the Vice President's view that consists of simply lacking

4   the power to do something that someone wants him to do.  And I

5   think that's two different settings.  And I don't think the

6   Vice President's view of that effectively opens him up to

7   questioning.

8           THE COURT:  But then let's talk about Helstoski, which

9   even there, it says promises by a Member to perform an act in

10  the future are not legislative acts.  So that's not even where

11  you are being bribed, that if the Member goes and says I will

12  do this for you, that's not covered.

13          MR. FLOOD:  Correct.  But ███████████████████████

14  ███████████████████    What we have here is conversations in

15  advance of the performance of the constitutional statutory

16  duties on January 6.  Those were preparatory conversations.

17  And part of the Vice President's preparation was to learn what

18  the arguments would be, what the position was, whether he could

19  accommodate it, or whether it was inconsistent with the advice

20  he was getting from his counsel.  All right.  And we submit

21  that is, so to speak -- in another setting, I think we would

22  call that garden variety legislative acts in preparation.

23          THE COURT:  And this is certainly, I think, the best

24  argument for this, and it seems particularly convincing when

25  addressed to his staff, his conversations with the

1    parliamentarian, his discussions about what he could do and how

2    he could do that on January 6.

3           My question, though, is why shouldn't I draw the line

4    between those which would be covered and conversations in which

5    people urged him to take steps he knew he couldn't take, didn't

6    have authority, didn't have legal power to take?  Why isn't

7    that a place, based on Brewster and Helstoski, to draw the

8    line?

9           MR. FLOOD:  Because, Your Honor, I think the key

10   concept here is preparation as a legislative act.  In Brewster,

11   the Court is clear that the conversation that Brewster engaged

12   in was no part of a legislative act.  There is nothing about

13   that that, as to Brewster who sought the protection of the

14   privilege, he could claim the coverage by reason of its being a

15   legislative act.

16          THE COURT:  Because it wasn't legal to take a bribe

17   even though Brewster said that the vote was protected.

18          MR. FLOOD:  Right.  To which I respond, Your Honor, it

19   wasn't legal to take bribes.  Okay.  He was the bribed person.

20          I just don't see -- I mean, Your Honor, I don't see

21   that there is a judicially administrable rule that can slice in

22   between Brewster and Gravel and assimilate this to Brewster

23   such that any conversation that someone has that a member of

24   the legislature or here the Vice President has in advance of a

25   congressional proceeding is open to testimonial compulsion if

1  someone can say at the threshold this may have involved some

2  illegality.  I think more is needed to crack the privilege.

3  And I will go back to what the court says in Eastland.  The

4  privilege, where it applies, sweeps broadly, and it may protect

5  material that otherwise the government or a private actor in a

6  civil suit might want to have.  But what's needed is a clear

7  rule and a clear application of a principle.  I don't see any

8  way to divide it there when ███████████████████████████

9  ███████████████████████████████.

10 ███████████    ████████████████████████████████

11 ████████████████████████████████████████

12 ███████████    ███████████████████████████████

13 ██████████████████████████████████████

14 ████████████████████████████████████████████

15 ███████████████████████████████

16 ████████████████████████████████    ████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ███████████████████████████

20 ███████████    █████████████████████████

21 █████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ██████████

```
1   ████████████   ████████████   ████████████

2   ████████████████████████████████████████████████

3   ████████████████████████████████████████████████

4   ████████████   ████████████   ████████████████

5   ████████████████

6   ██████████   ████████████████████████   █

7   ████████████████████████████████████████████████
```

8          THE COURT:  Great.  Thank you very much, Mr. Flood.

9          MR. FLOOD:  Thank you, Your Honor.

10         THE COURT:  Mr. Pearce, you are up again.

11         MR. PEARCE:  My inclination is to sort of engage right

12   where you were unless -- I'm happy to go back and kind of talk

13   about why we think there's a compelling argument that the Vice

14   President isn't covered but --

15         THE COURT:  I'll tell you, folks, that it's an

16   interesting issue.  I'm inclined to come down on the Vice

17   President's side of the line on that.  And I think you brief it

18   well.  They brief it well too.  I'm not pretending anywhere.  I

19   think I'm probably on their side of the line on that one.

20         So let's talk, though, about why -- Mr. Flood says,

21   you can't draw the line you are proposing, Judge, it doesn't

22   fly.  Do you want to tell me why you think I can draw that

23   line, or maybe you would rather put the line somewhere else,

24   but go ahead.

25         MR. PEARCE:  I want to spend a brief period of time

1   trying to persuade you to draw the line somewhere else but

2   ultimately come back and say that if you draw the line where I

3   heard you or understand you to have proposed it with Mr. Flood,

4   that that is defensible as well.  But, you know, in our view --

5   so let me start with one thing.  One of the concerns I heard

6   was the absence of a judicially administrable standard.  I

7   mean, I think, actually, as you said, that's common ground

8   between the parties.  And I think we all agree, if we are

9   talking about a legislative act, that's got to be an act that

10  is an integral part of the deliberative or communicative

11  process by which a Member, which will include the Vice

12  President for current purposes, participates in some matter

13  that's in the jurisdiction of either House.

14          With respect to January 6, we, of course, don't

15  disagree that the certification process was within the

16  jurisdiction of both Houses, as it were.  We believe the Vice

17  President was accurate in his memoir in describing his role

18  there as ministerial or ceremonial, in which case, in our view,

19  it thus follows that his acts there -- what he did there were

20  not legislative acts.

21          I think it comes nonetheless within the ambit of the

22  clause textually, but you know, you don't have to agree with us

23  there, you know, and we say in the portion of our brief we

24  think it's a plausible reading, if the Vice President is

25  covered, to say what he does on the floor of either the House

1    or the Senate is, in fact, covered.

2          Then the question becomes what acts are integral to

3    the communicative or deliberative process by which he readies

4    himself.  Now, again, our top line position is, because it's

5    ceremonial or ministerial, there are no such things and that,

6    therefore, the line should appropriately be drawn in a way that

7    says even if there were some kind of preparatory work that

8    might otherwise be covered, not in an instance where it is a

9    ceremonial or ministerial duty, I think to the extent the Vice

10   President were pontificating how to vote in a tie-breaking

11   vote, you know, as we concede in our papers, I think that could

12   potentially be trying to think about how best to vote.

13          You know, you may disagree and say, okay, you know, I

14   think some kind of preparation would, in fact, be relevant to

15   the Vice President's duties on January 6.  So if that's the

16   case, I think at best the line captures, as I think I heard the

17   Court say, conversations with the parliamentarian to understand

18   what are precisely my obligations, you know, what is it that I

19   need it do, what is kind of the balance of information

20   available.

21          THE COURT:  And how about where his staff says, look,

22   here are the options, here's how you should go about this, and

23   when a Member objects from a certain delegation, here's what

24   you have to do?  I mean, if he's covered, it would seem things

25   like that are also within the ambit.

```
1              MR. PEARCE:  I think that's a closer call.  I think a

2    lot would turn on precisely the nature of that advice, you know

3    if -- as, you know, in the hypothetical sort of you've just

4    offered, I think it's true that it's harder to put outside the

5    line if it is, you know, genuinely trying to prepare for how to

6    carry out the legislative duties, then I concede that is a much

7    more challenging row for us to hoe and to overcome.

8              To the extent the advice is about what are the

9    political calculations in doing this or that or, you know, what

10   might be the fallout or something like that, I think all of

11   that falls outside of it.  But if it is -- again, I'm not going

12   to back off our view, you know -- advice as to how to carry out

13   the ministerial job of presiding over -- and by ministerial, we

14   don't mean to suggest it's unimportant, but it is ministerial.

15             What is certainly not covered, however, are, to get

16   as, I think, Your Honor put it, to the nub of the matter, sort

17   of other individuals coming in sort of soliciting, whether

18   asked or not, advice or proffering ideas about what the Vice

19   President's powers or what he could or could not have done on

20   January 6.

21             And I actually don't even think it turns on whether or

22   not that advice is lawful or not.  You know, I think the fact

23   that there is a more than colorable argument, and I think, as

24   you said and the Vice President himself has suggested, he was

25   being asked to do things that he believed were unlawful that
```

1    exceeded the sort of constitutional and statutory duties, I

2    think that makes the point even more finely.

3         But we certainly don't read Brewster to say, look,

4    if -- as long as the member doesn't follow through on the

5    proposed course of objection, let's for present purposes posit

6    we are all going to agree it's illegal, Member doesn't carry

7    out that proposed action, there's nothing in Brewster that says

8    that that somehow falls outside of the scope, or is covered,

9    rather, by the speech or debate.

10        THE COURT:  All right.  So let's again sort of look

11   for where we draw the line.

12        So if, and I know you are not conceding, but if we say

13   that those sort of staff parliamentarian discussions are

14   relevant for his preparation of how he's going to act on

15   January 6, and then we get to ███████████████████████████

16   ██████████████████████████, how do we distinguish those from

17   the others without using this idea of ultra vires or acting

18   unlawfully?  In other words, how else can you distinguish them?

19        MR. PEARCE:  I think there's a kind of another aspect

20   of the speech or debate doctrine that comes into play here, and

21   that is this question of what I think is generally referred to

22   as informal fact-finding that's carried out by the Member.  And

23   we have taken the position, we think it's consistent with

24   Eastland and with the D.C. Circuit's decision in the McSurley

25   case, that essentially no informal fact-finding is permissible

1  unless it is authorized by its sort of -- there's a requirement

2  that it be authorized by some kind of congressional

3  authorization through a committee or subcommittee.

4          And here, right, there is no such kind of

5  authorization.  And so to the extent, you know, in this fact

6  pattern the Vice President wanted informally to try to get as

7  much information as possibly available to him, that that

8  actually just falls outside entirely of the scope of speech or

9  debate.

10         THE COURT:  So in other words, let's take a Senator,

11 clearly covered, who's preparing for an important vote, clearly

12 covered, and the White House or an agency or cabinet member

13 says to the Senator, look, it's really important that you vote

14 with us this way because, look, it's going to be great for your

15 constituents, it's important for the country, this is why we

16 want you to vote, I mean, isn't -- you say that's not covered?

17         MR. PEARCE:  I wouldn't see why it would be covered.

18 I don't see what about it would -- certainly under the top-line

19 view that there's no sort of congressional authorization

20 underlying the -- I mean, if I understand that example, it's,

21 again, sort of unsolicited commentary saying this is the way --

22 I mean, it's like a lobbyist, right, in that instance --

23         THE COURT:  Sure.

24         MR. PEARCE:  -- the executive is like a lobbyist.

25         THE COURT:  Sure.  But if it's solicited, if the

1    Member goes to the Secretary of Agricultural or Commerce and

2    says, why should I vote for this, I mean, sort of the voting is

3    the central legislative function, and getting informed, not by

4    some random town hall meeting, but from people in the executive

5    charged with that function, you still don't -- that's not

6    covered?

7            MR. PEARCE: So again, solicited, I think, gets us

8    back to this question of informal fact-finding. And yes, our

9    top-line view, and we have taken this in a case that's actually

10   pending before the D.C. case now --

11   ███████████   ████████████

12        ████████████   ████████████████████████

13   █████████

14        ███████████   ████████

15           MR. PEARCE: There was a public aspect of it where

16   argument was involved. But yeah, we have taken that position

17   there. But even if the D.C. Circuit were to decide that case

18   and adopt a more liberal standard, the sort of -- we refer to

19   this on page 26 of our papers, the Virgin Islands verse Lee,

20   out of the Third Circuit, which basically says, look, so long

21   as the individual's -- I think it's like significant and

22   bona fide purpose is legislative and is carrying that out in

23   order to further the legislative act, you know, you then get

24   what the Third Circuit later in the Menendez case calls sort of

25   an ambiguously legislative act. And then the Court has to kind

1   of inquire into the purpose and the motive, which all gets

2   pretty squishy pretty quickly in our view, and that's one of

3   the principal virtues of our test as opposed to that.

4        But let's say that that's the world in which we live,

5   you know, that is not -- I grant you that there might be some

6   challenging hypotheticals along the lines of I'm a Senator who

7   really wants to know the best way to vote on, let's say, an

8   agricultural bill, so I reach out to USDA and I say give me the

9   best science that you've got on this pending legislation, I'm

10  trying to parse through how to vote, right, I think that would

11  fairly pose a hard question.

12       That is nothing akin to, not only what we have

13  proffered, but what the former Vice President himself has

14  proffered, so to speak, in his memoir.

15       THE COURT:  But I'm -- again, no surprise -- I'm

16  struggling to find a line that's not the unlawful ultra vires

17  line between the two.

18       Let me ask you, and I think you were going to talk

19  about it and I may have cut you off, why you think Mr. Flood's

20  distinction of Brewster is wrong, in other words, why you think

21  that -- he says that if Brewster hadn't accepted the bribe,

22  that then their conversation would be covered.  I know this

23  isn't where you were prepared to draw the line, but do you have

24  a response to that?

25       MR. PEARCE:  Yeah, a couple responses.  One, a sort of

1  doctrinal, and then one I think is just sort of a matter of

2  common sense that I think I heard the Court say but certainly

3  won't put in the Court's mouth.

4       Doctrinally, it's impossible to square that with later

5  cases like Helstoski and other cases that say a promise to take

6  future acts are themselves unprotected under the speech or

7  debate clause.  So there's nothing in there about whether that

8  promise is in exchange for a bribe or is somehow to do

9  something other than what is, everyone might say, a vote or a

10  perfectly lawful act.

11       But the notion is we are not trying to protect the

12  kind of negotiation horse trading that might be going on.

13  Promising to do something, refusing to do something, you know,

14  isn't deserving of the protection in the same way that

15  preparing, again not necessarily our position, but you know,

16  preparing to vote on a bill or carrying out investigation in

17  preparation for a committee hearing.  So that's the doctrinal

18  point.

19       And then second, which again, I take it just to be

20  sort of a common sense point, which is it's hard to understand

21  why one would prioritize protecting unlawful activity where the

22  Senator didn't bite, so to speak, that somehow just because

23  that Senator said no, I'm not going to take the bribe, that

24  somehow that's protected, but when the Senator takes the bribe,

25  and we all agree whatever the Senator's corresponding action

1   is, whether that's a vote or a speech on the floor as it was in

2   Johnson, that that somehow becomes criminal at that point.  I

3   don't see any -- I mean, I suppose that's a line.  It just

4   seems to come out of thin air.

5          THE COURT:  Okay.  If there was any other point,

6   Mr. Pearce, that you wanted to make, I am happy to hear that.

7   Those were the main ones I was interested in.

8          MR. PEARCE:  I don't want to waste the Court's time.

9   I would be happy to try to persuade you on our top-line

10  argument, but I don't need to --

11         THE COURT:  Again, I think your brief was good.  It's

12  an interesting question.  But I'm not sure in a couple of

13  minutes you are going to say anything that I haven't read.

14         MR. PEARCE:  Okay.

15         THE COURT:  Thanks so much.

16         MR. PEARCE:  Thank you.

17         THE COURT:  Mr. Flood, I will give you a couple

18  minutes to rebut.

19         MR. FLOOD:  Thank you, Your Honor.

20         First I want to underscore that what we are seeking

21  here is the protection of an immunity.  If there is an

22  immunity, we submit that should take the form of something

23  approximating a general workable rule; otherwise, the immunity

24  won't function as an immunity.

25         Second, on the McSurely point, we think respectfully

```
1    the government has overread McSurely a little bit in general.

2    But as to the specific point that my colleague made on the

3    other side, the idea that there's no authorization here for

4    what the Vice President did, I think is just wrong.

5                In the congressional setting, I know Chief Judge

6    Howell --

7                THE COURT:  I'm sorry, I'm not tracking exactly,

8    Mr. Flood, when you say they said there's no authorization for

9    what he was doing, what --

10               MR. FLOOD:  I should be more precise, Your Honor.  I

11   took Mr. Pearce to be saying that the Vice President's actions,

12   at least as far as preparations go, had no official

13   authorization, and that to that extent, it was distinguishable

14   from what I will call one reading of McSurely.

15               THE COURT:  I didn't take -- I did not so infer --

16               MR. FLOOD:  Okay.

17               THE COURT:  -- so I don't think you need to address

18   that point.

19               MR. FLOOD:  Okay.  Just a couple last quick things

20   then, Your Honor.

21               As to whether the conduct is ministerial or not, we've

22   made clear, I think, that our position is that it's not.  But

23   even if it is, it's still protected because it is a legislative

24   act.

25               THE COURT:  Eastland says the protection is absolute.
```

```
 1          MR. FLOOD:  Yes.

 2          THE COURT:  And so it's -- I think sort of the

 3   question of whether as to diluted privilege or not is

 4   interesting, but Eastland certainly makes that argument

 5   stronger for your side.

 6          MR. FLOOD:  Okay.  And the last point on Helstoski,

 7   Your Honor.  If Mr. Pearce were right in that the rule of

 8   decision in Helstoski extended beyond a specific promise to

 9   take a future act and were extended to this situation in which

10   there is no suggestion of a promise, then the rule would expand

11   to, in effect, any conversation in advance of a legislative

12   act, and that, we submit, would vitiate the clause pretty

13   thoroughly.

14          THE COURT:  Sure.  The idea that if you said I want

15   you -- any request to do something would make it pretty broad,

16   yeah.  Okay.

17          MR. FLOOD:  Thank you.

18          THE COURT:  Thank you, sir.  ████████████████████

19   ████████████████████████████

20               ██████████████████████████████

21   ████████████████████████████████

22             ████████████  ████████████  ██████████████████████

23   ████████████  ██████████████

24          I just want to wrap this up.  I have appreciated

25   everybody's hard work on this, and again, this all seems to
```

```
 1    take place in a compressed time frame for sure.

 2              So my plan is to have rulings out by Monday ████████

 3    ██████████ and then folks can proceed from there.

 4              Is there anything else that -- and so what I would

 5    expect -- so expect to submit the rulings to the government

 6    first just to see if the government has anything they want to

 7    redact.  ██████████████████████████████████████████      If

 8    I do that, I will expect a very fast turnaround, as in a couple

 9    hours' turnaround.

10              So anybody have any other questions on logistics or

11    scheduling ████████████████, Mr. Pearce?

12              MR. PEARCE:  No questions.  And we would be prepared

13    to turn it around within a couple of hours for sure.

14              THE COURT:  Thank you.  ████████████████████████

15    ██████████

16              ████████████████  ████████████████

17              ████████████  ████████████████████

18              Mr. Flood?

19              MR. FLOOD:  No, Your Honor.  Thank you.

20              THE COURT:  Thanks, everybody.  Talk to you soon.

21              (The hearing concluded at 12:22 p.m.)

22                           -  -  -

23

24

25
```

C E R T I F I C A T E

I hereby certify that the foregoing is an
accurate transcription of the proceedings in the
above-entitled matter.

3/24/2023
████████████████ RMR, CRR
Official Court Reporter
333 Constitution Avenue NW
Washington, D.C. 20001